**Michelle A. LOCASTRO, Plaintiff,**

v.

**EAST SYRACUSE–MINOA CENTRAL SCHOOL DISTRICT, and Lawrence Maggi, Defendants.**

No. 91–CV–0694.

United States District Court, N.D. New York.

Aug. 19, 1993.

134

Michaels & Bell, P.C., Auburn, NY (Paul C. Campbell, of counsel), for plaintiff.

O'Hara & O'Connell, P.C., Syracuse, NY (Dennis G. O'Hara, of counsel), for defendant East Syracuse–Minoa Cent. School Dist.

Hancock & Estabrook, Syracuse, NY (Janet D. Callahan, Renee L. James, of counsel), for defendant Lawrence Maggi.

## DECISION AND ORDER

McAVOY, Chief Judge.

### I.  Introduction

This case was tried in Watertown, New York before the court and a jury commencing June 3, 1993 and concluding June 15, 1993.  Submitted to the jury were plaintiff's claims under New York State Human Rights Law § 296 and 42 U.S.C. § 1983, and an additional state law claim of intentional infliction for emotional distress.  The jury found no cause of action existed as to each of these claims.  At the same time the court heard proof on plaintiff's claim under Title VII, 42 U.S.C. § 2000e et seq..  The following constitutes the court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52, with respect to that claim.

### II.  Facts

Plaintiff, a teacher who was at one time temporarily certified in special education, answered a newspaper advertisement placed by the defendant East Syracuse–Minoa Central School District ("School District") in the spring of 1989.  After interviewing with the School District, plaintiff was hired to teach special education classes during the 1989–90 school year.  As part of the hiring process the School District inquired as to plaintiff's certification status, and was told by plaintiff that she had written to the New York State Department of Education for renewal of her temporary certification.

Plaintiff commenced teaching in the fall of 1989.  During that semester she was asked to chaperone a school dance.  Plaintiff alleges that at the dance she was approached by defendant Lawrence Maggi who was the principal of the Pinegrove building where plaintiff worked.  Plaintiff claims that Maggi, a married man, made inquiries as to what she was going to do after the dance.  Plaintiff testified that Maggi smelled of alcohol, and that he improperly placed his hand on her back, moving it towards her buttocks in a sexually offensive manner.

Plaintiff testified that just before the Christmas holidays, defendant Maggi kissed her on the lips in an offensive and sexually suggestive manner in the main corridor of the Pinegrove school building when both students and other teachers were present.  Just after that incident, and shortly before Christmas, plaintiff was called into defendant Maggi's office to discuss an ongoing tardiness problem perceived by the School District.  Plaintiff asserts that on that occasion Maggi smelled of alcohol, that he began talking to her about religion and other topics unassociated with school business, and that at some point in the discussion he began telling her about the motion picture "Looking for Mr. Goodbar".  That movie depicted a special education teacher who went from bar to bar picking up men and engaged in sexual activities with them.  According to the testimony, one of those men ultimately killed her.  Plaintiff testified that she was extremely upset by these events and tried to avoid meeting with defendant Maggi during the remainder of her time at Pinegrove.  In addition to what was described, plaintiff also testified that defendant Maggi told her, on more than one occasion, that she should wear shorter skirts in order to show off her legs because he was a "leg man".

On January 22, 1990, plaintiff alleges that she was in the mailroom on business when Maggi again approached her.  They were alone and Maggi allegedly placed his hand on the small of her back, and again, in a sexually unwelcome manner, moved it from that position down to her buttocks.  That same day, plaintiff reported the sexually offensive behavior to her supervisor, other school officials, and the superintendent of schools, Jerry Beck.  Superintendent Beck issued an order that defendant Maggi stay away from plaintiff.  At the same time Superintendent Beck called for a hearing by an "impartial" hearing officer, Mark Reitz.  Defendant Maggi denied all of plaintiff's allegations, with the exception of the kiss in the hallway.

While the hearing officer was interviewing witnesses and prior to the time he issued his report, plaintiff alleges that defendant Maggi continued to sexually harass her in violation of the superintendent's no contact order.  Specifically, she indicated that he would stand outside her classroom and stare at her for as long as 45 minutes.  She also stated that on two occasions he touched her on the

arm and spoke to her, in violation of the order, and that this was very upsetting to her. This was reported to school officials who ordered Assistant Superintendent Voninski to investigate the matter. Voninski testified that he talked to all of the persons named by plaintiff as witnesses to defendant Maggi's advances, and that he concluded that these incidents never occurred.

After the impartial hearing, Hearing Officer Reitz was unable to determine who was being truthful and who was lying about the events at issue. Superintendent Beck adopted the hearing officer's position and no action was taken by the District with respect to the incidents.

In addition to the incidents already mentioned, plaintiff also alleges that she received many disturbing phone calls during which the caller would either hang up or remain silent on the phone. Plaintiff believed some of the calls came from defendant Maggi and she asserts that she contacted the police to have a device placed on the telephone to "trap" the caller.

As stated earlier, defendant Maggi denied all of plaintiff's allegations, with the exception of the kiss bestowed on plaintiff in the hall. The court notes that plaintiff failed to present corroborating evidence at trial to support her allegations. Therefore, the court, faced with starkly different accounts of what actually occurred between plaintiff and defendant Maggi, is left to resolve the issue of whether plaintiff was indeed a victim of harassment based on the credibility of the witnesses.

Plaintiff claims that in reprisal for her complaints to school officials about Maggi's sexual harassment, the officials began building a case against her with respect to her employment performance, and ultimately refused to hire her in the area of either special or elementary education for the following school year.

In response, the School District denies retaliation and indicates that they had a legitimate non-discriminatory reason for both documenting plaintiff's actions and failing to rehire her for the next school year. School officials testified that plaintiff missed meetings which were scheduled for her before the 1989–90 school year and that she was absent two days during the first two weeks of the fall semester. Also, school officials testified that plaintiff was tardy on many occasions, which was the reason they began to document her arrival times. When questioned about this plaintiff indicated to school officials that she had received permission from the superintendent to arrive late because she lived in Auburn and had to commute to work via a road that was congested and had frequent accidents. This story was later investigated by school officials and found to be untrue.

School officials also testified that plaintiff lied to them about a physical examination that the school required as part of the hiring process. Plaintiff indicated to them that she had received the necessary physical examination and that a copy of the report would come to the School District. When it failed to arrive, school officials pressured her to undergo an examination, which she eventually did. An examination of the records revealed that the physician had not conducted an earlier examination of plaintiff as she had previously claimed.

Finally, school officials stated that plaintiff lied to them about her temporary teaching certification. When questioned about it in the fall of 1989, she told school officials that she had written to the New York State Department of Education and requested renewal of her temporary certification. When pressed for details, plaintiff asked another teacher to type a back-dated letter showing that such a request had been made. She presented this to the school officials and thereby allayed their concerns about her certification until the spring of 1990, when it was discovered that no such application had been made to the Education Department.

It then became necessary for the School District and plaintiff to apply jointly to the State Education Department to obtain a temporary certification issued nunc pro tunc to the beginning of the 1989–90 school year. That certification did not extend beyond the school year. During the period when the School District was considering whether to rehire plaintiff for the following year, school

officials indicated that they would do so only if she began taking classes required for obtaining the necessary certification. Plaintiff failed to do this; and consequently, the School District did not rehire her for the following year.

Plaintiff claims that defendant Maggi's conduct constitutes sexual harassment in violation of Title VII, specifically 42 U.S.C. § 2000e–2(a)(1). Plaintiff further claims that the School District's decision not to rehire her was also unlawful retaliation in violation of Title VII. *See* 42 U.S.C. § 2000e–3(a). She seeks to recover damages from both defendants for defendant Maggi's conduct, and from the School District for the alleged retaliation. For the reasons that follow, the court finds for the defendants on all of plaintiff's claims.

## III. Discussion

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Title VII also makes it unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title...." 42 U.S.C. § 2000e–3(a).

### A. *Sexual Harassment*

■ A plaintiff seeking to recover for sexual harassment under 42 U.S.C. § 2000e–2(a)(1) must first establish, that she is a member of a protected class. In the present action, plaintiff's membership in a protected class is undisputed. As a woman, she is within a class of persons which Congress sought to protect from sexual harassment. *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982); *Fair v. Guiding Eyes for the Blind, Inc.*, 742 F.Supp. 151, 155 (S.D.N.Y. 1990). Second, such a plaintiff must also show that but for the fact of her sex, she would not have been the object of harassment. *Henson*, 682 F.2d at 904 (citations omitted). In the present case, this is also undisputed.

■ A plaintiff charging sexual harassment may proceed under either, or both, of two theories: (1) quid pro quo or (2) hostile work environment. *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986). "Under the quid pro quo theory, the plaintiff-employee must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her." *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir.1992). Plaintiff in the present action makes no such allegation, nor was any proof presented at trial which would tend to substantiate such a claim. It is clear from both the complaint and the trial record that plaintiff seeks to recover under a hostile work environment theory.

■ To establish her claim under the hostile work environment theory, plaintiff must prove that she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for favors or other verbal or physical conduct of a sexual nature, and that the harassment affected a term, condition or privilege of employment. *Kotcher*, 957 F.2d at 62; *Babcock v. Frank*, 783 F.Supp. 800, 808 (S.D.N.Y.1992); *Carrero v. New York Housing Authority*, 668 F.Supp. 196, 201–02 (S.D.N.Y.1987) *aff'd in part, rev'd in part on other grounds*, 890 F.2d 569 (2d Cir.1989). She must prove that the offensive behavior was "sufficiently severe or pervasive to 'alter the conditions of [her] employment and create an abusive working environment.'" *Christoforou v. Ryder Truck Rental, Inc.*, 668 F.Supp. 294, 301 (S.D.N.Y.1987). See *Meritor Savings Bank*, 477 U.S. at 67, 106 S.Ct. at 2405; *Kotcher*, 957 F.2d at 62. The sexually harassing conduct "must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher*, 957 F.2d at 62, (citing *Carrero*, 890 F.2d at 577); See also *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189–90 (2d Cir.1987). Finally, the conduct complained of must also be unwelcome. *Meritor Savings Bank*, 477 U.S. at 68, 106 S.Ct. at 2406; *Kotcher*, 957 F.2d at 62.

To determine whether the offending conduct rises to the level of a hostile work environment, the court must look at the totality of the circumstances. *See Meritor Savings Bank,* 477 U.S. at 69, 106 S.Ct. at 2406; *Carrero,* 890 F.2d at 577–8. If the evidence presented would lead a reasonable person in a similar situation to find the conduct offensive, then liability should attach under Title VII. *Danna v. New York Telephone,* 752 F.Supp. 594, 610 (S.D.N.Y.1990); *Bennet v. New York City Department of Corrections,* 705 F.Supp. 979, 984 (S.D.N.Y. 1989); *Barbetta v. Chemlawn Services Corp.,* 669 F.Supp. 569, 573 (W.D.N.Y 1987). Finally, to hold the School District responsible for the hostile environment allegedly created by defendant Maggi must show that the School District either (1) provided no reasonable avenue for complaint or (2) knew of the harassment but did nothing about it. *Kotcher,* 957 F.2d at 63; *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986).

Turning to the merits, the court need not determine whether the conduct complained off by plaintiff rises to the level of actionable sexual harassment.[1] Based on the evidence presented at trial, the court finds that plaintiff's credibility has been eroded, and further that she has failed to prove her allegations. Plaintiff at all times has the burden of proving, by a preponderance of the evidence, that her claim, and the elements that comprise that claim are true. This must be done by the presentation of credible evidence at trial. During the instant trial defendants proved that on various occasions during the course of her employment, plaintiff lied about several facts material to both the School District's decision to hire her, and its decision to continue her employment. Defendants proved that plaintiff deceived them regarding the status of her certification to teach in the field of special education and the required physical examination, and that she had not received permission from her supervisors to be late to work when she had previously indicated to the contrary.

The court, in its role as fact-finder on plaintiff's Title VII claims, finds that significant doubt was cast upon plaintiff's credibility.[2] Plaintiff has failed to convince the court that defendant Maggi by words or actions violated the prescriptions of the statute involved. Thus, the court concludes that plaintiff has failed to prove the existence of a hostile work environment by a preponderance of the evidence, and therefore, need not reach the issue of *respondeat superior* liability. Accordingly, the court finds for the defendants on plaintiff's sexual harassment claim.

### B. *Retaliation Claim*

Plaintiff also contends that the defendant School District failed to rehire her in retaliation for filing a claim with the EEOC. Claims of this nature involve the three step burden shifting approach from *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To fulfill the initial burden, plaintiff must prove a prima facie case of retaliation. Such a prima facie case consists of the following elements: (1) that plaintiff engaged in protected activities under Title VII, (2) that the employer was aware of this activity, (3) that the employer took adverse action against plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action. *Kotcher,* 957 F.2d at 64 (citing *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991)); *Sumner v. United States Postal Service,* 899 F.2d 203, 208–9 (2d Cir.1990).

Once plaintiff has proven a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. "The defendant must clearly establish through admissible evidence the reasons for plaintiff's termination. 'The explanation must be legally sufficient to justify

---

1. Assuming plaintiff's allegations to be true, the court might very well find that defendant Maggi's actions were sufficiently pervasive so as to alter the conditions of plaintiff's employment. And even if the court should find that they were not sufficient, the court would still deem defendant Maggi's actions to be highly inappropriate and completely out of place in a work environment.

2. The court recognizes the import of the jury's verdict which resolved the factual issues underpinning the claims in defendants' favor.

a judgement for defendant.'" *Tunis v. Corning Glass Works,* 747 F.Supp. 951, 960 (S.D.N.Y.1990) (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)), *aff'd,* 930 F.2d 910 (2d Cir.1991). "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

If the defendant meets its burden, the analysis shift to the third step where plaintiff must prove that the proffered reason was not the true reason for the adverse action. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. In other words, plaintiff must show that the reasons advanced were pretextual. *Kotcher,* 957 F.2d at 64–65. *See also McDonnell Douglas, supra.* However, in the final analysis, plaintiff retains the ultimate burden of persuading the court that she was the victim of sexual discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. *See also Saint Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The court has serious doubts as to whether plaintiff has established a prima facie case of retaliatory discrimination since there is insufficient evidence proving a causal connection between the protected activity and the School District's failure to rehire her. Nevertheless, even assuming that plaintiff has made out a prima facie case of retaliation, the School District has proven a legitimate, non-discriminatory reason for failing to rehire her. Her documented tardiness and absenteeism, her lying to School District officials, and her failure to obtain the necessary certification all combine to show that the decision not to rehire her was legitimate and nondiscriminatory. Plaintiff has failed to disprove these reasons; and she has simply failed to satisfy her ultimate burden of proving that the decision was motivated by her complaints of sexual harassment.

Additionally, plaintiff's case against the School District fails because she did not show by a preponderance of the evidence that she was qualified to teach during the ensuing school semesters. No evidence of recertification or other licensing was offered. This further supports the School District's decision not to rehire her. Therefore, the court must find for the defendant School District on the issue of retaliation.

## IV. Conclusion

Plaintiff has failed to prove that defendant Maggi's actions constituted sexual harassment under Title VII. Therefore, plaintiff's claim against defendant Maggi for sexual harassment, as well as the claim against defendant School District for allowing such harassment to continue, must be dismissed. Plaintiff was also unable to meet her ultimate burden of proof with regard to her retaliation claim against defendant School District. Accordingly, plaintiff's retaliation claim must also be dismissed.

Based upon this decision, the court's rulings during trial, and the verdict rendered on June 15, 1993, the Clerk is hereby directed to enter judgment in favor of the defendants on all counts in the complaint.

**IT IS SO ORDERED.**