**Carrie BUSH and Alan Bush, Plaintiffs,**

v.

**RAYMOND CORPORATION, INC., and Chuck Sawyer and Greg Rusnak, as Aiders and Abettors, Defendants.**

No. 96–CV–302.

United States District Court, N.D. New York.

Feb. 21, 1997.

---

Law Offices of Ronald R. Benjamin, Binghamton, NY (Ronald R. Benjamin, Wendy A. Kowalczyk, of counsel), for Plaintiffs.

Twining, Nemia & Steflik, Binghamton, NY (Joseph J. Steflik, Jr., of counsel), for Defendants.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

Plaintiff Carrie Bush and her husband Alan Bush filed this action alleging sexual harassment, discriminatory and retaliatory discharge and loss of consortium, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), and the New York Human Rights Law, Executive Law § 296 ("HRL"). Currently before the Court is defendants' second motion for summary judgment.

## I. BACKGROUND

### A. Facts:

Plaintiff Carrie Bush was employed by defendant Raymond Corporation, Inc. ("Raymond") from approximately August of 1985 to February of 1995. From 1993 to 1994, plaintiff was supervised by defendant Chuck Sawyer ("Sawyer"), who also was the acting

manager of the department within which plaintiff worked. Defendant Greg Rusnak ("Rusnak") was plaintiff's supervisor from January 16, 1995 to February 14, 1995. Prior to his position as her supervisor, Rusnak was plaintiff's co-worker. Alan Bush was and is plaintiff's husband, and was also employed by Raymond during the relevant period.

Plaintiff alleges that from the time she began working for Raymond, Sawyer made offensive comments about her; such comments escalated when she was promoted to the Tagging Department in 1994. These comments included the following:

—"I have to get away from you before anything happens";

—"You've got a really great looking wife," to Alan Bush in the presence of plaintiff;

—"How did she look in a two piece bathing suit?" to Alan Bush in the presence of plaintiff;

—"If I tell you what your raise is, will I get a kiss and a hug?";

—"That feels great," after putting his arms around plaintiff;

—"God you smell great";

—"Let me know if you ever decide to leave your husband";

—"Don't worry, if you ever leave him you can move right in with me."

Sometime thereafter, plaintiff alleges that Rusnak also began to make offensive remarks to her, accusing her of having a sexual relationship with Sawyer. These remarks included: "if you weren't fucking Chuck, you would have been fired a long time ago," and "How is Chucky lately? You had better wipe off your mouth." Sawyer and Rusnak deny making these comments.

Plaintiff contends that during 1994 and early 1995, she repeatedly told Rusnak that his comments were offensive, and that he should stop making them. She further alleges that, during the same time period, she complained to Sawyer, who merely told employees during a meeting to leave each other alone and to stop making comments about each other. Sawyer denies that plaintiff ever

made any complaints that she was being sexually harassed. Nevertheless, plaintiff contends that two days after this alleged meeting, Rusnak resumed making sexually oriented remarks.

Rusnak alleges that plaintiff and another employee left work early on January 31, 1995, which plaintiff denies. As a result, the other employee was terminated. Fearing the same fate, plaintiff allegedly contacted Steve Pecoraro in the Human Resources Department to determine what was occurring. During the course of that conversation, plaintiff asserts that she told Pecoraro about Sawyer and Rusnak's conduct. Pecoraro allegedly told plaintiff that he would look into it.

According to plaintiff, Pecoraro called back 45 minutes later and informed plaintiff that he conducted an investigation and reached the conclusion that there was no sexual harassment occurring at Raymond. Since plaintiff felt that the only way to be free from the harassment was to quit, she did so on February 1, 1995.

The next day, however, plaintiff asked for her job back. Plaintiff was returned to the Sand and Mask Department; she alleges that Pecoraro told her that she and Rusnak would have to work out their problems between themselves.

Defendants allege that plaintiff was scheduled for mandatory overtime on February 11, from which she requested to be excused. Rusnak claims that he denied the request. When plaintiff failed to show up, she was terminated. Plaintiff contends that she was never informed the overtime was mandatory; rather, she asserts that Rusnak told her he would "like" her to work on the 11th, which she declined.

Raymond has a policy against sexual harassment contained in its Employee Manual, which advises employees to immediately contact Human Resources regarding instances of harassing conduct. Plaintiff admits receiving a copy of the book when she was initially hired, and admits having read it.

**B.  Procedural History:**

On July 10, 1995, plaintiff filed a complaint with the New York State Division of Human

Rights ("DHR"). Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on January 12, 1996.

Plaintiff and Alan Bush filed a Complaint in this Court on February 20, 1996. An Amended Complaint was filed on February 23, 1996. The Amended Complaint alleged causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York Human Rights Law, Executive Law § 296. A third cause of action for Mr. Bush's loss of consortium also was alleged.

Defendants filed Answers to the Amended Complaint, and first moved for summary judgment on September 17, 1996. In a Memorandum, Decision and Order dated December 14, 1996, this Court granted defendants' motion in part, dismissing the loss of consortium claim in its entirety[1], and the Title VII claims against Sawyer and Rusnak individually. The Court declined to dismiss the HRL claims against Sawyer and Rusnak, finding that supplemental jurisdiction existed.

Defendants now move for summary judgment dismissing the remaining claims. They argue that (1) there is no evidence that plaintiff was subjected to pervasive or severe harassment sufficient to alter the conditions of her employment; (2) that plaintiff's failure to use Raymond's internal complaint procedures requires dismissal of the harassment claims; (3) that Sawyer and Rusnak cannot be held liable individually for harassment under the HRL since they have no ownership interest in the company; and (4) that summary judgment is appropriate at this state since plaintiff is unable to establish disparate treatment based on gender or retaliation.

## II. DISCUSSION

### A. Defendants' Motion for Summary Judgment.

The Court now turns to defendants' motion for summary judgment.

### (1). The Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

### (2). Hostile Work Environment Sexual Harassment

Defendants argue that plaintiffs' Title VII and HRL claims should be dismissed because no evidence exists that plaintiff was subjected to hostile work environment sexual harassment.

To establish a claim for hostile work environment sexual harassment, plaintiff must show: "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995).

As to the first prong of this analysis, "the plaintiff must first prove that discriminatory harassment occurred with respect to 'terms,

---

1. Since Alan Bush's loss of consortium claim has been dismissed, the Court's references to "plain- tiff" in this opinion apply to Carrie Bush only.

conditions, or privileges' of employment, ... though [the plaintiff] need not show that [she] lost any tangible job benefits as a result thereof." *Id.* Further, "[a]ctionable sexual harassment must consist of more than isolated incidents or casual comments that express harassment or hostility." *Babcock v. Frank,* 783 F.Supp. 800, 808 (S.D.N.Y.1992). Rather, "[t]he harassment at issue must be 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Kotcher v. Rosa and Sullivan Appliance Center,* Inc., 957 F.2d 59, 63 (2d Cir.1992) (quoting *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)). In this regard, "the incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher,* 957 F.2d at 63 (citing *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577 (2d Cir.1989)). Moreover, the employee must subjectively perceive the environment to be abusive, and the environment must be one that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993). Whether such conduct reaches the level of actionable sexual harassment is determined by the totality of the circumstances. *Babcock,* 783 F.Supp. at 808 (citing *Meritor,* 477 U.S. at 69, 106 S.Ct. at 2406–07).

■ Defendants argue that even if true, Sawyer and Rusnak's "innocuous" conduct does not rise to a sufficiently severe level to be actionable under Title VII. The Court disagrees, and find that plaintiff's allegations raise an issue of fact as to whether her work environment was permeated with severe or pervasive harassment.

Sawyer and Rusnak's alleged remarks, combined over a period of time, could reasonably lead a trier of fact to conclude that plaintiff's work environment was abusive, particularly with respect to Rusnak's vulgar, sexually explicit accusations regarding plaintiff having a sexual relationship with Sawyer. Furthermore, plaintiff alleges that such conduct "began to interfere with [her] job performance as [she] did not want to be left alone with Sawyer for fear that he would make advances toward [her] and began to be very short tempered due to the stress [she] was under." (Pl.Aff. ¶ 8). Plaintiff clearly asserts that the conduct was unwelcome. *See Meritor,* 477 U.S. at 68, 106 S.Ct. at 2406.

Moreover, while plaintiff does not specify when or how often the particular comments occurred, she does assert, for example, that Sawyer and Rusnak's remarks occurred on an "almost daily" basis. (Pl.Aff. ¶¶ 9, 13); *see Harris,* 510 U.S. at 22, 114 S.Ct. at 370–71 (noting that in determining whether work environment is hostile, frequency of discriminatory conduct is relevant, and that no single factor is required). While the conduct taken in isolation may not be viewed as severe, its frequency could lead a trier of fact to find that such conduct was abusive, since "'the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.'" *Trotta v. Mobil Oil Corp.,* 788 F.Supp. 1336, 1349 (S.D.N.Y.1992) (quoting *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir.1991)). Thus, a reasonable jury could conclude that the cumulative effect of the alleged conduct, occurring on a daily basis throughout plaintiff's employment, subjected her to a hostile work environment. *Ritter v. Medical Arts Center Hosp.,* 1997 WL 45349, at *6 (S.D.N.Y.1997). *Cf. Erlach v. New York City Bd. of Educ.,* 1996 WL 705282, at *10 (E.D.N.Y.1996) ("sporadic remarks and actions occurring over a very brief time period are too insignificant and isolated to allow a jury to conclude that a hostile work environment existed").

The inquiry does not end here, however; Sawyer and Rusnak's conduct must be attributable to Raymond in order for Title VII liability to attach. Employer liability for hostile work environment sexual harassment arises in two situations:

[First,] when a supervisor wields the authority delegated to him by an employer either (a) to condition "tangible job benefits" affecting an employee on the employee's acceptance or rejection of the supervisor's sexual demands, or (b) to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is

deemed to be that of the employer, and the employer's liability for that conduct is absolute. [Second,] employer liability for a hostile environment created by co-workers, or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, attaches only when the employer has "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it."

*Murray*, 57 F.3d at 249 (citations omitted) (quoting *Kotcher*, 957 F.2d at 63). Rusnak clearly was plaintiff's co-worker during all of the alleged instances of hostile work environment sexual harassment. Once Rusnak became plaintiff's supervisor, he is alleged only to have used his supervisory authority in an attempt to terminate plaintiff, rather than to further the creation of an abusive work environment.

Sawyer, however, was plaintiff's supervisor during many of the alleged instances of harassment. As plaintiff's supervisor, Sawyer's conduct will be attributed to Raymond if Sawyer "wield[ed] the authority delegated to him by [Raymond] either (a) to condition tangible job benefits affecting an employee on the employee's acceptance or rejection of the [Sawyer's] sexual demands, or (b) to further the creation of a discriminatorily abusive work environment." *Murray*, 57 F.3d at 249 (internal quotations omitted). Essentially, plaintiff must allege sufficient facts to establish a nexus between Sawyer's supervisory authority and the harassing conduct. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1306 (2d Cir.1995). It is unclear from this record that Sawyer in fact wielded such authority in connection with the alleged conduct. *Cf. Tomka*, 66 F.3d at 1306–07 (finding sufficient nexus between defendant company and sexual assault of the plaintiff where evidence showed harassing supervisor used his apparent authority to convene business dinner, after which the plaintiff was sexually assaulted by employees of the defendant company); *DiLaurenzio v. Atlantic Paratrans, Inc.*, 926 F.Supp. 310, 315 (E.D.N.Y.1996) (supervisor had employees make numerous harassing

phone calls to plaintiff, threatened plaintiff with retaliatory harm if she brought sexual harassment suit against him).[2]

Nonetheless, both Sawyer and Rusnak's conduct will be deemed that of Raymond if Raymond provided no reasonable avenue of complaint, or knew of the harassment but did nothing about it. *Kotcher*, 957 F.2d at 63. Based upon plaintiff's submissions, a genuine issue of material fact exists in this regard.

First, plaintiff alleges that she complained to Sawyer about Rusnak's comments, telling him that

> I was literally getting tired of listening to it, that I want something done with him about it. And he said he would, that I wasn't to worry about it, just to be quiet.

(Pl.Dep. at 35). Plaintiff allegedly complained to Sawyer again two weeks later, which resulted in Sawyer telling several employees in plaintiff's group and her husband's group to leave each other alone. (Pl.Dep. at 38). Finally, plaintiff alleges that she complained again in February of 1995 to Pecoraro in Human Resources, who told her, approximately forty-five minutes later, that he concluded that no sexual harassment had occurred. (Pl.Aff. ¶ 26).

These allegations raise a triable issue of fact both as to whether Raymond provided a reasonable avenue of complaint, and whether Raymond knew of the harassment but did nothing about it. With respect to plaintiff's allegation of Pecoraro's cursory treatment of her complaint, a jury could reasonably find that Raymond, through its Human Resources department, had notice of the alleged harassment, and yet did nothing. Furthermore, Sawyer and Pecoraro's alleged unresponsiveness to plaintiff' concerns could reasonably lead a jury to conclude that Raymond provided no avenue of complaint, since under the alleged scenario, plaintiff found no recourse in the very procedure recommended in the Sexual Harassment Policy. (*See* Steflik Aff., Ex. E.) ("If you encounter [sexual harassment] from managers, fellow employees, or visitors, you should contact your immediate manager or human resources.").

---

**2.** This would not, however, foreclose plaintiff from adducing at trial evidence that Sawyer used his supervisory authority to further a hostile work environment.

Defendants argue that plaintiff's failure to use Raymond's internal complaint procedures precludes a finding that Raymond is liable for the harassment. The existence of such a mechanism, however, and plaintiff's use (or lack thereof) of its procedures, do not, in and of themselves, require the Court to reach the conclusion that Sawyer and Rusnak's conduct cannot be imputed to Raymond. *See Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1181 (2d Cir.1996). Rather, Raymond's liability is determined by whether it took reasonable steps to eliminate the hostile work environment. *Snell v. Suffolk County,* 782 F.2d 1094, 1104 (2d Cir. 1986) "The question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury, whose inquiry is informed by the evidence as a whole, including evidence of the motivations and actions of the employer between the time the grievance procedure is concluded and the time the employee is discharged." *Reed,* 95 F.3d at 1181. Based upon the submissions reviewed above, triable issues of fact exist as to whether Raymond provided a reasonable avenue of complaint, and whether it "knew of the harassment but did nothing about it." *Id.* (quoting *Karibian v. Columbia University,* 14 F.3d 773, 780 (2d Cir.1994)).

Since plaintiff has raised triable issues of fact, summary judgment is denied as to plaintiff's hostile work environment sexual harassment claims against Raymond under Title VII and the HRL.[3]

### (3). Individual Liability under the HRL

Defendants next argue that plaintiff may not maintain an action against Sawyer and Rusnak individually under the HRL because

neither had an ownership interest in Raymond.

New York State Human Rights Law, Executive Law § 290, *et seq.* provides, in pertinent part, that

1. It shall be an unlawful discriminatory practice:

\*　　\*　　\*　　\*　　\*　　\*

(e) For any employer ... to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden under this article ...

N.Y.Exec.Law § 296(1)(e) (McKinney 1993). Construing the term "employer", the New York State Court of Appeals, in *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), held that an individual employee is not liable under the HRL "if he isn't shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich,* 483 N.Y.S.2d at 660, 473 N.E.2d at 12. Therefore, plaintiff states no HRL claim against Sawyer and Rusnak individually under this provision, since she sets forth no facts showing that they are "employers" within the meaning of the HRL. *See Summers v. County of Monroe,* 147 A.D.2d 949, 537 N.Y.S.2d 703, 705 (4th Dep't 1989); *Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 529 N.Y.S.2d 512, 514 (2d Dep't 1988).

■ It is clear, however, that plaintiff does not rely on "employer" liability. Another provision of the HRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden

---

**3.** The Court's holding applies to both the Title VII and HRL claims since, in sex discrimination cases, "New York courts require the same standard of proof for claims brought under the [Human Rights Law] as those brought under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1996) (citing *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)). "However, this conclusion is limited to establishing whether there has been discrimination, not who is liable for having discriminated[.]" *McNulty v. New York City Dep't of Finance,* 941 F.Supp. 452, 458 (S.D.N.Y.1996). In terms of imputing liability to the employer, the HRL imposes a stricter standard than Title VII. *See Karibian v. Columbia University,* 930 F.Supp. 134, 138 (S.D.N.Y. 1996); *Father Belle Community Center v. State Div. of Human Rts.,* 221 A.D.2d 44, 642 N.Y.S.2d 739, 745–46 (4th Dep't 1996). *But see Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714–15 (2d Cir.1996); *Torres v. New York University,* 1996 WL 393565 (S.D.N.Y.); *Zveiter v. Brazilian Nat. Superintendency of Merchant Marine,* 833 F.Supp. 1089, 1095 (S.D.N.Y.1993) (noting that standards for imputing liability to employer are same under Title VII and HRL). Nonetheless, since defendants fail to address the stricter HRL standard, they have not placed the matter in issue.

under this article ...". N.Y.Exec.Law § 296(6) (McKinney 1993). Thus, while individuals may be held liable as *employers* only if they are alleged to have an ownership interest or the ability to make personnel decisions, "a defendant who *actually participates* in the conduct giving rise to the discrimination claim may be held personally liable under the HRL." *Tomka v. Seiler Corp.* 66 F.3d 1295, 1317 (2d Cir.1995) (emphasis added). From the above discussion, there can be no question that plaintiff has set forth sufficient facts that, if believed by the jury, would show that both Sawyer and Rusnak "actually participated" in the harassing conduct, and thus may be held personally liable under the HRL. *See Tomka,* 66 F.3d at 1317.[4] Thus, defendants' motion for summary judgment dismissing the HRL claims against Sawyer and Rusnak must be denied.

### (4). Discriminatory/Retaliatory Discharge

Lastly, defendants contend that plaintiff's claims of retaliatory or discriminatory discharge cannot stand.

Title VII makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin;
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> to discriminate against any of his employees ... because he has "opposed any practice made an unlawful employment practice by this title. . . ."

42 U.S.C. § 2000e–2(a)(1); § 2000e–3(a). Claims of either discriminatory or retaliatory discharge involve the three step burden shift-

ing approach from *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, the plaintiff initially is required to establish a *prima facie* case for relief. *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 160–61 (2d Cir.), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *Duprey v. Prudential Ins. Co. of America,* 910 F.Supp. 879, 883 (N.D.N.Y.1996). Once the plaintiff has proved a *prima facie* case, the burden shifts to the employer to articulate a legitimate explanation for the adverse action which, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If the employer satisfies this burden, plaintiff must then prove that such explanations are a mere pretext for discrimination. *Monette v. EDS Corp.,* 90 F.3d 1173, 1187 (6th Cir.1996). At all times, the burden of persuasion remains with the plaintiff. *Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747.

A *prima facie* claim of discriminatory discharge based on gender requires that plaintiff show: (1) that she belongs to a protected class; (2) that she was qualified to perform her job; (3) that she was discharged; and (4) that the circumstances of her discharge give rise to an inference of discrimination. *See Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 204 (2d Cir.1995). To state a *prima facie* claim of retaliatory discharge, plaintiff must establish: 1) that she participated in a protected activity known to defendant; 2)

---

4. *Tomka*'s holding in this regard has come under recent fire; its interpretation of the aiding and abetting provision of the HRL arguably could "subject all employees to individual liability in contravention of *Patrowich,* because a corporation can only act vicariously, through its agents." *Cerrato v. Durham,* 941 F.Supp. 388, 396 (S.D.N.Y.1996). The problem arises because *Patrowich* and *Tomka* pull in different directions. At least one New York State court has criticized *Tomka* and its predecessors for

> "ignor[ing], by rendering meaningless in most cases," the legislative choice of the word "employer" in § 296(1)(a), and the substance of

the 'economic reality' test giving meaning to that word embraced in *Patrowich.* Application of that test would be unnecessary if individual employees in any event would be held liable as aiders and abettors.

*Foley v. Mobil Chemical Co.,* 170 Misc.2d 1, 647 N.Y.S.2d 374, 381 (Sup.Ct.Monroe County 1996). Nonetheless, *Tomka* is the law in this Circuit, and this Court is constrained by its holding. *See Johnson v. A.P. Products, Ltd.,* 934 F.Supp. 625, 630 (S.D.N.Y.1996); *Luongo v. Nationwide Mut. Ins. Co.,* 1996 WL 445365 at *3; *Tagare v. NYNEX Network Systems Co.,* 921 F.Supp. 1146, 1152 (S.D.N.Y.1996).

that her employer took adverse employment action against her; and 3) that there exists a causal link between the protected activity and the adverse employment action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996); *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 64 (2d Cir.1992).

█ Defendants argue that plaintiff cannot make out a *prima facie* case of discriminatory or retaliatory discharge because plaintiff has offered no evidence to show that her gender or her complaints of sexual harassment played any part in the decision to terminate her. Plaintiff fails to respond specifically to this argument, but she does contend that she was terminated in part due to the fact that Rusnak "was jealous of what he believed to be special treatment I was receiving due to my alleged sexual relationship with defendant Sawyer." (Pl.Aff. ¶ 36). Such a contention, clearly is insufficient to support a claim of gender discrimination based upon *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir.1986), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987). In *DeCintio*, the Second Circuit faced the issue of whether Title VII's prohibition of discrimination based on "sex" encompassed discrimination based upon a romantic relationship between the employer and a person preferentially hired. *Id.* at 306. In reversing the district court's finding that Title VII had been violated, the Second Circuit held that "[t]he proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations." *Id.* at 307. Thus, plaintiff's discriminatory discharge claim fails insofar as it asserts that plaintiff was discharged because of Rusnak's perception that plaintiff and Sawyer had a sexual relationship.

█ Furthermore, the circumstances surrounding plaintiff's termination, as alleged by her, fail to give rise to an inference of discrimination or retaliation. Plaintiff alleges that after Pecoraro reached the conclusion, on February 1, 1995, that no sexual harassment had occurred, she felt that "the only way [she] would be free from Rusnak's and Sawyer's behavior was to terminate [her]

employment with Raymond, which, feeling extremely frustrated, [she] promptly did." (Pl.Aff. ¶ 27). The next day, plaintiff asked for, and was given, her job back. (*Id.* ¶ 28). Defendants allege that her return was based upon certain conditions, namely that she notify defendants if she needed time off, improved her work habits, and pay better attention to personal habits. (*See* Steflik Aff., Ex. E).

█ Moreover, defendants allege that plaintiff was scheduled for mandatory overtime on February 11, 1995, for which she failed to appear (Sawyer Aff. ¶ 6). This, defendants contend, resulted in plaintiff's termination. Since plaintiff admits that she herself quit her job, and was subsequently re-hired, after she had complained a number of times about sexual harassment, it would be difficult indeed to infer on these facts alone that her subsequent termination was a result of her gender or her complaints. Indeed, where the plaintiff in a discrimination case relies on circumstantial evidence, "that circumstantial evidence must be tied *directly* to the alleged discriminatory animus." *Ostrowski v. Atlantic Mutual Insurance Co.*, 968 F.2d 171, 182 (2d Cir.1992) (emphasis added). Plaintiff here makes no such showing.

Of course, the Court can only assume that the plaintiff would argue the above, since plaintiff's counsel in their memorandum of law wholly fail to address defendants' arguments with respect to the claims of discriminatory or retaliatory discharge. Plaintiff does assert, however: (a) that she was never informed that the overtime was mandatory; (b) that defendants originally relied on her alleged failure to report to work on February 14, 1995, as the reason for her discharge, and thus defendants "cannot determine which pretext for [plaintiff's] better protects them from liability." (Pl.Aff. ¶ 32).

These assertions reflect plaintiff's misunderstanding of the *McDonnell Douglas* analysis. Even if we accept these assertions as true, they fail to support even the slightest circumstantial inference that plaintiff was discharged because she was a woman, or because she complained of sexual harassment. Plaintiff attempts to jump to the final

stage of the analysis and show discrimination based only upon evidence that defendants' proffered reasons for her discharge were a pretext. Such a showing is useless absent the initial establishment of a *prima facie* case. *See, e.g., Hicks,* 509 U.S. at 517, 113 S.Ct. at 2752 (noting that "proving the employer's reason [for the discharge] false becomes *part of* ... the greater enterprise of proving that the real reason was intentional discrimination") (emphasis added). Since plaintiff has failed to make a *prima facie* showing of discriminatory or retaliatory discharge, then, defendants' motion for summary judgment is granted in this regard.[5]

### III. CONCLUSION

For all of the foregoing reasons, then, it is hereby

ORDERED, that defendants' motion for summary judgment dismissing plaintiff's hostile work environment sexual harassment claim under Title VII against Raymond is DENIED;

ORDERED, that defendants' motion for summary judgment dismissing plaintiff's hostile work environment sexual harassment claim under the New York Human Rights Law against Sawyer and Rusnak is DENIED;

ORDERED, that defendants' motion for summary judgment dismissing plaintiff's discriminatory and retaliatory discharge claims under Title VII and the New York Human Rights Law against all defendants is GRANTED.

**IT IS SO ORDERED.**

---

5. Once again, this dismissal applies to plaintiff's claims under both Title VII and the HRL. *See* *supra,* note 3.