Pamela **KOTCHER** and Barbara Davis, Plaintiffs,

Pamela Kotcher, Plaintiff–Appellant,

v.

**ROSA AND SULLIVAN APPLIANCE CENTER, INC., and Herbert Trageser, Defendants–Appellees.**

No. 31, Docket 91–7284.

United States Court of Appeals, Second Circuit.

Argued Oct. 10, 1991.

Decided Feb. 24, 1992.

Faith A. Seidenberg, Syracuse, N.Y. (Seidenberg, Strunk & Goldenberg, of counsel), for plaintiff-appellant.

Mark L. Suher, Rochester, N.Y. (Phillips, Lytle, Hitchcock, Blaine & Huber, and Gerald L. Paley, of counsel), for defendant-appellee.

McGuiness & Williams, Washington, D.C. (Robert E. Williams, Douglas S. McDowell, and Ann Elizabeth Reesman, Counsel of Record), for amicus curiae Equal Employment Advisory Council.

Before OAKES, Chief Judge, NEWMAN and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff-appellant Pamela Kotcher appeals from a judgment entered in the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge,* dismissing her claim under Title VII, 42 U.S.C. § 2000e *et seq.* This case arises from Kotcher's allegations that defendant-appellee Herbert Trageser, the manager of the Oswego branch store of defendant-appellee Rosa and Sullivan Appliance Center, Inc., sexually harassed her during her employment with Rosa and Sullivan. Although the district court found that Trageser's conduct created a "hostile work environment" sufficient to constitute a viable Title VII claim, it refused to impose liability on Rosa and Sullivan because it found that once Trageser's conduct was reported to Rosa and Sullivan's head office, the company took prompt and effective action to remedy the situation. Thus, the court held, Rosa and Sullivan was not liable for Trageser's actions under Title VII. Kotcher now challenges this ruling on several grounds.

## BACKGROUND

Pamela Kotcher was hired by Rosa and Sullivan on November 4, 1986, as a salesperson paid on a commission basis. Co-plaintiff Barbara Davis, who brought suit along with Kotcher in the district court but chose not to appeal, had been hired a few months earlier, in March of 1986, as a general office clerk paid at an hourly wage.

Both women worked at the Oswego, New York store, which was managed by Herbert Trageser. Trageser supervised both employees until January of 1987, when Kotcher and Davis made formal complaints to the management of the corporation, alleging that Trageser had been sexually harassing them.

Both Kotcher and Davis accused Trageser of repeated episodes of sexual harassment, manifested by vulgar comments and gestures. This treatment included, but was not limited to, comments to the effect that if Trageser had the same bodily "equipment" as Kotcher, his sales would be more substantial. In addition, Trageser often pretended to masturbate and ejaculate at Kotcher behind her back to express his anger with her. This treatment took place on a regular basis, often in front of others at the store.

Davis was subjected to similar degrading treatment. Testimony at trial established that Trageser made numerous comments about her breasts and other parts of her body. On one occasion, Trageser even grabbed her, leaving bruises on her arms. He also made offensive gestures towards her when her back was turned, similar to the humiliating conduct he directed at Kotcher.

The district court found that neither Kotcher nor Davis welcomed this conduct, that each had immediately made it known to Trageser that his comments and conduct were not appreciated, that Trageser's comments and conduct were of such a degrading nature that "no ordinary person would welcome them", and that the comments and conduct constituted "exactly the sort of demeaning behavior that Title VII was intended to address." The district court further found that these acts were of sufficient pervasiveness to create a hostile environment, meriting protection under Title VII, and concluded that each plaintiff had established a violation of the statute.

The district court also concluded, however, that manager Trageser's actions did not impose liability on Rosa and Sullivan. It found, instead, that Rosa and Sullivan

had provided its employees with a reasonable opportunity to complain about discrimination, because it had prominently posted notices and telephone numbers, informing employees that the head office was available to receive any grievances. The court found that neither Kotcher nor Davis promptly availed themselves of this procedure. Furthermore, it found that once the two employees did report Trageser's conduct, Rosa and Sullivan within 24 hours started an investigation into the complaints and then quickly transferred and demoted Trageser. Based on these findings, the district court held that Rosa and Sullivan had taken prompt and effective action to remedy the problem, and that this action established that Rosa and Sullivan did not tolerate or condone a sexually discriminatory work environment. Thus, the court concluded that Rosa and Sullivan was not liable to the plaintiffs.

In reaching this conclusion, the district court also found that Kotcher had been instructed by management to take time off while it conducted the investigation. There was conflicting testimony at trial as to whether Kotcher had been expected to return to work, but refused to do so; or whether she had been fired without explanation. The district court recognized this conflict, but did not determine the issue. Instead, the court simply noted that Kotcher did not work at Rosa and Sullivan following her complaint. It also noted that Kotcher had stated that she was in need of counseling and unable to work and that it was nine months before she was able to seek other employment.

In June of 1987, five months after his transfer, Trageser was returned to the Oswego store and reinstated as manager.

## DISCUSSION

Title VII, 42 U.S.C. § 2000e *et seq.*, provides redress against employers who discriminate against individuals in the work place. A plaintiff seeking relief for sex discrimination can proceed under two theories: (1) "quid pro quo" and (2) "hostile work environment". *See Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986). Although Kotcher and Davis proceeded solely on the "hostile work environment" theory, a brief review of both theories helps to illustrate the distinctions between the claims and the proofs they require.

Under a "quid pro quo" theory, the plaintiff-employee must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her. *Id.* If the plaintiff can show that she suffered an economic injury from her supervisor's actions, the employer becomes strictly liable without any further showing of why the employer should be responsible for the supervisor's conduct. The supervisor is deemed to act on behalf of the employer when making decisions that affect the economic status of the employee. From the perspective of the employee, the supervisor and the employer merge into a single entity.

In contrast, a "hostile work environment" theory requires that the plaintiff prove not only actionable sex discrimination, but also that the supervisor's actions should be imputed to the employer. To show actionable sex discrimination, the plaintiff must first prove that discriminatory harassment occurred with respect to "terms, conditions, or privileges" of employment, 42 U.S.C. § 2000e–2(a)(1), though she need not show that she lost any tangible job benefits as a result thereof. A court should consider the offensiveness of the defendant's conduct, its pervasiveness, and its continuous nature. *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989). The harassment at issue must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2405. The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief. *Carrero*, 890 F.2d at 577 (citing *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987)). The conduct complained of must be unwelcome. *Vinson*, 477 U.S. at 68, 106 S.Ct. at

2406. Ultimately, whether there is a valid claim under Title VII depends on the totality of the circumstances. *See Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir. 1986).

In addition to establishing that she was subjected to a hostile employment environment, plaintiff must establish that the conduct which created the hostile situation should be imputed to the employer. *Vinson,* 477 U.S. at 70–71, 106 S.Ct. at 2407. The Supreme Court in *Vinson* did not specify under what circumstances an employer would become liable, but instead directed the lower courts to draw from traditional agency principles to decide that liability. *Id.* at 72, 106 S.Ct. at 2408. We have stated that a plaintiff must prove that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it. *Snell,* 782 F.2d at 1104.

■ In this case, the district court found that Trageser's conduct was sufficiently offensive, pervasive, and continuous to create a hostile work environment and to establish the first element of the claim. We agree. Trageser's behavior is certainly one type of egregious conduct that Title VII was enacted to correct.

On the second element, however, the district court refused to find that Rosa and Sullivan should be liable for Trageser's offensive behavior. Applying the *Vinson* guidelines, it found that Rosa and Sullivan's established procedure for reporting discrimination, as well as its swift response once the plaintiffs had invoked the procedure, demonstrated that the company did not tolerate or condone a sexually discriminatory work environment. Thus, the court held, Rosa and Sullivan could not be held liable for Trageser's offensive actions.

■ Although we do not conclude that any of the district court's express findings are clearly erroneous, we have reservations about the district court's conclusion that Rosa and Sullivan should not be liable for Trageser's behavior. We find generally disturbing Kotcher's argument and supporting evidence that Rosa and Sullivan only paid lip service to being committed to a nondiscriminatory work environment; in particular, we are troubled by the circumstances surrounding Kotcher's departure from the company. The district court did not make any factual findings as to these circumstances, and we think that a fair determination of Kotcher's claim requires further consideration and additional findings by the district court.

■ Before we address our particular concerns with the district court's conclusion, we will dispose of two other arguments made by Kotcher, neither of which has merit. First, Kotcher contends that Rosa and Sullivan had prior actual notice of Trageser's discriminatory activities, but failed to take appropriate action to protect the plaintiffs. She asserts specifically that the company knew about Trageser's discriminatory tendencies because another female employee had filed a formal complaint with management a year before the incidents against Kotcher and Davis. There was evidence that Debbie Faye, a previously-employed salesperson with Rosa and Sullivan, had been harassed by Trageser, then also a salesperson, and she had complained to the store manager about his behavior. The store manager spoke to Trageser and gave him a written warning. This prior incident, Kotcher argues, gave Rosa and Sullivan actual notice of Trageser's propensities, thus requiring the company to take appropriate action to correct his behavior.

Although the district court did not specifically address this question, it implicitly held that the prior incident was not sufficiently egregious to require severe remedial actions by the employer. Of course, not every response to a complaint should take the form of discharge, and we conclude that the district court could reasonably have found that the employer had responded appropriately because the written warning was sufficient to make Trageser aware that the harassment would not be tolerated on its premises.

■ Second, Kotcher claims that Rosa and Sullivan knew or should have known of Trageser's harassments of her and Davis, and condoned his conduct. Both had com-

plained to Trageser, himself, and to other supervisors at the Oswego store; therefore, she argues, there were enough people in the company, both fellow employees and other supervisors, who knew about Trageser's offensive conduct to give the company constructive notice. Kotcher also points out that since Trageser was himself a person with decision-making capacity, under principles of agency, the company should be held directly accountable for his conduct.

Here also, we sympathize with Kotcher, but decline to reject the district court's findings. At some point, even under the *Vinson* dichotomy between quid pro quo claims and hostile work environment claims, the actions of a supervisor at a sufficiently high level in the hierarchy would necessarily be imputed to the company. But we do not think that this case presents such a situation, and the district court could reasonably have found that the company, whose main office was in Rochester, did not have constructive notice of Trageser's behavior in Oswego.

We now turn to Kotcher's argument that the district court did not adequately consider whether the company's response to her sexual harassment complaint was merely pretense, and in particular, whether she had been unlawfully fired. Properly analyzed, Kotcher's argument can be viewed in two parts, neither of which was adequately addressed by the court. First, she claimed that the brief "punishment" of Trageser, when followed by full reinstatement at the Oswego store, established that Rosa and Sullivan's response to plaintiff's complaints was a sham. Kotcher refers to the facts that (1) Rosa and Sullivan's initial response to her complaint was to transfer Trageser to another store, taking the risk that he might harass others at his new location; and (2) the company transferred Trageser back to the Oswego store and promoted him to his prior position shortly after Kotcher and Davis left the company. Although the district court may have implicitly rejected Kotcher's argument that the company's reaction to her complaint was a sham, it should not have done so without fully considering the company's follow-up

to Kotcher's complaint and making appropriate findings. Her claims must be evaluated in light of all the circumstances, including the cloud of suspicion created by Trageser's prompt restoration to his original position, a circumstance tending to indicate that Rosa and Sullivan at least tolerated his unlawful harassing conduct.

 Second, while she has never invoked the term "retaliation", Kotcher's claim that she was fired soon after she complained about Trageser seems to present an instance of retaliation in violation of section 704(a) of Title VII, which prohibits an employer from discriminating "against any of his employees * * * because he [the employee] has opposed any practice made unlawful by this subchapter". 42 U.S.C. § 2000e-3(a). "The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). Since Kotcher is, in effect, arguing that the fact of her complaint was the reason that Rosa and Sullivan did not want her to return to work, she seems to be urging that the company took retaliatory action against her for complaining. To establish a prima facie case of retaliation, "a plaintiff must show participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991). *See also Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990); *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). "Once a prima facie case is made, the burden of production 'shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its actions.'" *Johnson*, 931 F.2d at 207 (citing *Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir.1988)). If the defendant meets its burden of articulating "a

permissible reason for its actions, the plaintiff must then show that the reasons advanced were pretextual." *Id.* (citing *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)).

It might be argued that Kotcher's allegations do not establish a conventional retaliation claim, where the protected activity usually takes the form of filing a formal complaint with an agency or filing a lawsuit. *See, e.g., Johnson*, 931 F.2d at 207; *Hollander*, 895 F.2d at 85; *DeCintio*, 821 F.2d at 115. However, in *Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir.1989), we stated that "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." Although *Grant* involved a claim under the Age Discrimination in Employment Act, 42 U.S.C. § 621 *et seq.*, the language protecting against retaliation is very similar to that found in Title VII, and our interpretations of the two acts are similar. *Id.* at 1568.

In this case, Kotcher had not filed a formal agency complaint before she was fired, but she did make an internal complaint to company management, protesting the sexually harassing actions of her supervisor. Surely this opposition to the unlawful practice of sexual harassment is protected activity within the policies of Title VII:

> Title VII places upon an employer the responsibility to maintain a work place environment free of sexual harassment. * * * The EEOC Compliance Manual further provides that employers should create a procedure for resolving sexual harassment complaints that encourages victims of sexual harassment to come forward. It should ensure confidentiality as much as possible and provide *effective remedies, including protection of victims and witnesses against retaliation.*

*Newsday v. Long Island Typographical Union*, 915 F.2d 840, 844–845 (2d Cir.1990) (emphasis added), *cert. denied*, —— U.S. ——, 111 S.Ct. 1314, 113 L.Ed.2d 247 (1991).

Thus, the evidence in this case raises strong suspicions about the circumstances surrounding Kotcher's departure from the company, and whether she was subjected to unlawful retaliation. Yet, on this issue, too, the district court made no finding.

In short, it is for the district court, in the first instance, to determine whether Kotcher has a valid claim, either as to the "sham" response by Rosa and Sullivan or the possibly unlawful retaliation, so we must remand the case to the district court for further proceedings, including appropriate findings on these issues.

### CONCLUSION

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.