Sandra RIEDINGER, Plaintiff,

v.

Thomas D'AMICANTINO, individually and as a Juvenile Officer, Renee Finn, individually and as Detective Sergeant and Officer in Charge of the Juvenile Division of the City of Beacon Police Department, John Johnson, individually and as Chief of Police of the City of Beacon Police Department, Joseph H. Braun, individually and as City Administrator for the City of Beacon, Richard Sassi, individually and as Captain and/or Acting Chief of Police in the City of Beacon Police Department, and the City of Beacon, New York, Defendants.

No. 95 Civ. 1721 (BDP).

United States District Court,
S.D. New York.

Aug. 19, 1997.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff Sandra Riedinger.

James Kerr, Kerr & Weiss, New Paltz, NY, for Defendant D'Amicantino..

David L. Posner, McCabe & Mack, Poughkeepsie, NY, for Defendants Finn, Johnson, Braun, Sassi and City of Beacon.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

Plaintiff Sandra Riedinger ("Riedinger") brings this action against defendants Thomas D'Amicantino ("D'Amicantino"), Renee P. Finn ("Finn"), John Johnson ("Johnson"), Joseph H. Braun ("Braun"), and Richard Sassi ("Sassi") as individuals and in their official capacities, and the City of Beacon ("City"), pursuant to 42 U.S.C. § 1983, alleging violations of her First Amendment rights to free speech and to petition the government for redress of grievances, and constructive discharge in violation of the Fourteenth Amendment, as well as discrimination and retaliation in violation of the Civil Rights Act of 1964, Title VII, 42 U.S.C. §§ 2000e–2 (a)(1) and 1–3(a). Riedinger also asserts a number of parallel state law claims pursuant to this Court's pendant jurisdiction. *See* 28 U.S.C. § 1367(a).

Before this Court is defendants' motion for summary judgment, pursuant to Fed. R.Civ.P. 56(b). For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

On a motion for summary judgment, "[a]s a general rule, all ambiguities and references to be drawn from the underlying facts should be resolved in favor of the party opposing the motion." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). The following facts are construed accordingly.

In February 1981, the City of Beacon Police Department Juvenile Division ("the Division") hired Sandra Riedinger as a senior stenographer. In January 1991, Thomas

D'Amicantino began working for the Division as a Juvenile Officer. Riedinger claims that from May 1992 through July 1993, D'Amicantino made a series of sexually explicit remarks to her, detailing, for example, the times that he had sex with other women both on and off duty. D'Amicantino either denies making these statements, or he claims that they were made in jest and that he did not believe they were offensive. Also, according to plaintiff, D'Amicantino engaged in physically aggressive behavior, once attempting to handcuff her and on another occasion placing her in a headlock.

In addition, D'Amicantino received magazines and catalogues that displayed models in various stages of undress at the Division office from at least April 1993 until after September 1993. Riedinger, in her role as senior stenographer at the Division, was required to deliver these publications, along with the rest of the Division's mail. Riedinger contends that, on a number of occasions, D'Amicantino alluded in conversations with her to photographs in the publications.

In July 1993, Riedinger complained to Detective Sergeant Finn, her supervisor and Officer in Charge of the Division, about the problems that she had been experiencing with D'Amicantino. According to Riedinger, Finn responded by saying that very little could be done about the situation.

On August 6, 1993, Finn altered Riedinger's work schedule, which had been the same for the previous six years. Riedinger filed a grievance with the Division to have her old hours restored, claiming that the changes in her schedule created a hardship for her with child care. The petition was denied.

On September 17, 1993, Riedinger filed a complaint with Police Chief John Johnson about her experiences working with D'Amicantino and Finn at the Division. According to Riedinger, Johnson "told [her] that what [she] was experiencing was sexual harassment," and advised her to contact the New York State Department of Human Rights to pursue her complaint. Johnson, who disputes making that statement, instead claims that he provided her with a handout from Duchess County Division of Human Rights, which described the sort of behavior that could be considered sexual harassment. Johnson Dep. at 13–19. Johnson also told her that he would speak to D'Amicantino about his behavior.

On September 27, 1993, Riedinger injured her back in a non-work related injury and had to take time off from work. Shortly after that, Johnson told Riedinger that she had used all of her sick time, and because she was not working, the Division was terminating her from her job. On October 21, she received a letter from City Administrator Joe Braun which stated, "Please appreciate, unless you return to work immediately, you are absent without leave and must be replaced." Riedinger asserts that, at the time, she had vacation and personal time available to her. Indeed, Braun admits that he was mistaken as to the City's sick leave policy when the actions took place. In early November 1993, Riedinger returned to the Division on a part-time basis.

On December 7, 1993, Riedinger filed a written complaint alleging "sexual harassment and misconduct within the Juvenile Division." Braun investigated the complaint, interviewing Riedinger, Finn and D'Amicantino. He subsequently drafted and circulated an anti-harassment policy for all City employees, which was implemented on February 1, 1994. Braun did not discipline anyone in the Division for misconduct.

On February 2, 1994, Finn placed a letter of reprimand in Riedinger's file for being approximately six minutes late to work on an unspecified date in December 1993. On February 4, 1994, plaintiff received a second reprimand for tardiness. That same day, Riedinger claims that Finn yelled at her, forbidding her from leaving the Division office without permission. Riedinger then tendered her resignation.

On June 8, 1994, Riedinger filed a complaint with the EEOC, charging that she had been the object of gender discrimination in the form of sexual harassment and retaliation.

## SUMMARY JUDGMENT STANDARD

The Court will grant summary judgment only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, to-. gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In deciding this motion, the Court must resolve all ambiguities and draw all factual inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). Summary judgment is inappropriate when the nonmovant's evidence is merely conclusory, speculative or not significantly probative. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 12–15 (1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## CONTINUING VIOLATION AND TITLE VII CLAIMS

■ Defendants' principal argument in support of summary judgment is that much of the conduct complained of with regard to plaintiff's hostile work environment claim[1] took place more than 300 days prior to the filing of plaintiff's EEOC charge and, to that extent, is time barred. Riedinger, in turn, asserts that the acts complained of constituted a continuing violation of her civil rights, that at least one incident occurred within the 300 day period, and thus that all of her claims are timely.

A Title VII claim is time-barred when the plaintiff fails to file a timely charge of discrimination with the EEOC.

[I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... such charge shall be filed by or on behalf of the person aggrieved within three hundred

days after the alleged unlawful employment practice.

42 U.S.C. § 2000e–5(e)(1); *see also Butts v. City of New York Dep't. of Hous.,* 990 F.2d 1397, 1401 (2d Cir.1993). Thus, incidents of discrimination that occurred during the 300 days immediately prior to the filing of the EEOC charge generally are the only acts admissible under section 2000e–5(e)(1).

■ Our Court of Appeals, however, recognizes under limited circumstances a "continuing violation exception" to the time-bar rule. *Lambert v. Genesee Hosp.,* 10 F.3d 46 (2d Cir.1993). "[I]f a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Id.* at 53. "The courts in this circuit consistently have looked unfavorably on continuing violation arguments.. Indeed, only 'compelling circumstances' will warrant application of the exception to the statute of limitations." *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y. 1989).

Thus, the continuing violation exception will "appl[y] to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists ... or discriminatory employment tests," *Lambert,* 10 F.3d at 53, whereas multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism will not amount to a continuing violation. *Id.* (citations omitted). A continuing violation may nonetheless be found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory practice." *Cornwell v. Robin-*

---

1. Defendant's statute of limitation argument applies only to plaintiff's hostile work environment claim. Plaintiff's Title VII claim of retaliation is not time-barred. As almost all of the alleged incidents of retaliation occurred after August 13, 1993, this latter claim falls well within the statute of limitations. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712–14 (2d Cir.1996) (although the plaintiff's Title VII gender discrimina-

tion claim was time-barred, her Title VII retaliation claim was not); *Brown v. Time. Inc.,* No. 95 Civ. 10081, 1997 WL 231143, at *4–5 (S.D.N.Y. May 7, 1997) (where race-based discrimination and retaliation "were not committed pursuant to the same policy," the Court must treat the claims separately for purposes of a continuing violation).

*son*, 23 F.3d 694, 704 (2d Cir.1994). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time-barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996).

Our Court of Appeals has yet to articulate a precise formulation of what constitutes "specific and related instances of discrimination." A number of courts in this District, however, have adopted the Fifth Circuit's test, as articulated in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971 (5th Cir.1983).[2] *See. e.g., Johnson v. Nyack Hosp.*, 891 F.Supp. 155 (S.D.N.Y. 1995), aff'd., 86 F.3d 8 (2d Cir.1996); *Brown v. Time, Inc.*, No. 95 Civ. 10081, 1997 WL 231143 (S.D.N.Y. May 7, 1997); *Davis v. City Univ. of New York*, No. 94 Civ. 7277, 1996 WL 243256 (S.D.N.Y. May 9, 1996); *Flynn v. Goldman, Sachs & Co.*, No. 91 Civ. 0035, 1993 WL 336957 (S.D.N.Y. Sep. 3, 1993).

In *Berry*, the Fifth Circuit, in determining whether specific and related discriminatory acts amount to a discriminatory practice, looked to three distinct issues:

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring.. or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights[?]

*Berry*, 715 F.2d at 981.

In applying this test, courts have drawn a distinction between cases involving a continuous pattern of discrimination and a single act that should cause a plaintiff to assert her rights. *See Waltman v. International Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989). Harassment that creates a hostile work environment will not have the same degree of permanence as a single incident, such as termination or the loss of a promotion, which should trigger an employee's duty to assert her rights. *See Waltman*, 875 F.2d at 476; *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 756 (3d Cir.1995); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416 (10th Cir. 1993). As other courts have noted, "by its nature, a claim of 'hostile environment' discrimination turns on the existence of continuing violation." *Wise v. New York City Police Dep't*, 928 F.Supp. 355, 366–67 (S.D.N.Y. 1996) (quoting *Engelmann v. National Broadcasting Co.*, No. 94 Civ. 5616, 1996 WL 76107, at *15 (S.D.N.Y. Feb.22, 1996)) (triable issues of fact existed as to whether continuing violation exception applied, precluding summary judgment on plaintiff's hostile work environment claim); *see Cornwell*, 23 F.3d at 704 (continuing violation finding was supported by "the same evidence that established [plaintiff's] hostile-work environment claim"); *Shull v. Rite Aid Corp.*, No. 94 Civ. 8552, 1997 WL 289460 (S.D.N.Y. May 30, 1997) (continuing violation adequately pled on plaintiff's hostile work environment claim); *McKenney v. New York City Off-Track Betting Corp.*, 903 F.Supp. 619, 621–22 (S.D.N.Y.1995) (applying exception to claims involving an alleged pattern of sexual harassment).

■ Here, plaintiff claims that Riedinger repeatedly, from May 1992 through June 1993, made sexually explicit remarks and gestures towards her, which she reported to her supervisors. If plaintiff's evidence is credited by the trier of fact, it would suffice to establish a persistent pattern of harassing behavior on the part of D'Amicantino and awareness of that harassment on the part of Riedinger's supervisors to render that harassment chargeable to them. Thus, whether specific and related instances of discrimination amounting to a discriminatory practice beyond the time before which non-continuing violations of Title VII should be time barred is a disputed issue of fact that cannot be resolved on this motion. *See Martin*, 3 F.3d at 1416; *Yaba v. Roosevelt*, 961

---

**2.** A number of Courts of Appeals have also adopted the *Berry* test. *See, e.g., West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir.1995); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410 (10th Cir.1993); *Selan v. Kiley*, 969 F.2d 560 (7th Cir.1992).

F.Supp. 611, 619 (S.D.N.Y.1997); *McKenney v. New York City Off–Track Betting Corp.*, 903 F.Supp. 619, 622 (S.D.N.Y.1995); *Flynn*, 1993 WL 336957, at *6. Accordingly, defendants' motion for summary judgment of statute of limitations grounds is denied.[3]

## HOSTILE WORK ENVIRONMENT

To prevail on her hostile work environment claim, Riedinger must show (1) that "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment" *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995) (internal quotations omitted), and (2) "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant*, 80 F.3d at 715. To decide whether a hostile work environment exists, a finder of fact must consider the totality of the circumstances, which may include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). "[I]solated remarks or occasional episodes of harassment will not merit relief under Title VII. In order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka*, 66 F.3d at 1305, n. 5.

Here, Riedinger claims that over the course of seventeen months—between May 1992 and September 1993—she was subjected to a pattern of vulgar comments and gestures, as well as unwelcome physical contact and offensive behavior by D'Amicantino. She catalogues at least a dozen incidents involving sexual remarks—including details about the times that he had sex at work, repeated reference to his sex life, and gestures about the breast size of a female police cadet. Viewing the totality of the circumstances in the light most favorable to Riedinger, I find that the plaintiff has demonstrated a triable issue of fact as to whether those incidents were severe and pervasive enough to have, cumulatively, altered the conditions of Riedinger's work environment. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 61–63 (2d Cir.1992).

In order to prevail on her Title VII claim, plaintiff, however, must also demonstrate "that the conduct which created the hostile situation should be imputed to the employer." *Kotcher*, 957 F.2d at 63. Where, as here, a low-level supervisor or plaintiff's co-worker is the alleged harasser, liability will be imputed

**3.** Defendants also move to dismiss plaintiff's parallel Human Rights Law claims on the ground that those claims are time-barred. Although "New York courts require the same standard of proof for claims brought under the [Human Rights Law § 296] as those brought under Title VII," *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995); *see Van Zant*, 80 F.3d at 714–15, claims under § 296 "are governed by the three-year statute of limitations prescribed by CPLR 214(2)." *Morrison v. New York City Police Dep't*, 214 A.D.2d 394, 394–95, 625 N.Y.S.2d 174, 175 (1st Dep't.1995); *see Van Zant*, 80 F.3d at 714. Under that rule, all of plaintiff's allegations of sexual harassment and retaliation that occurred after March 13, 1992 are admissible.

Defendants, citing *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), also contend that D'Amicantino, Finn, Johnson, Braun and Sassi are not liable under the Human Rights Law, because they have not been "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." Our Court of Appeals, however, has clearly stated that

§ 296(6) of the [Human Rights Law] states that it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.' N.Y. Exec. Law § 296(6).... Based on this language, several courts [in the Second Circuit] have distinguished *Patrowich* by holding that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [Human Rights Law].

*Tomka*, 66 F.3d at 1317.

Riedinger alleges that all defendants participated in the conduct resulting in the sexual harassment and retaliation. As discussed above, genuine issues of material fact exist with respect to whether the individual defendants are liable for sexual harassment and retaliatory discrimination. Therefore, defendants' motion for summary judgment is denied with respect to plaintiff's claims of sexual harassment and retaliation under New York's Human Rights Law.

to the employer if the plaintiff proves "that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher,* 957 F.2d at 63; *Tomka,* 66 F.3d at 1305. A plaintiff can demonstrate an employer's knowledge of the harassment by "constructive notice (i.e., management should have known)." *Van Zant,* 80 F.3d at 715.

Riedinger asserts that Finn, Johnson, and Braun—all supervisors to Riedinger at varying levels—were aware of D'Amicantino's conduct and that they all failed to take appropriate measures to remedy the situation. Defendants, on the other hand, point to several actions to support their assertion that they responded to Riedinger's concerns in an appropriate manner. First, they claim that shortly after plaintiff complained to Finn in July 1993, much of the sexual harassment stopped. Second, they allege that after Riedinger formally complained to Johnson in September 1993, he provided her with information on sexual harassment and offered to speak to D'Amicantino. Third, they note that in response to Riedinger's formal complaint in December 1993, Braun established the City's antidiscrimination policy and opened an investigation into plaintiff's grievance.

Riedinger alleges that these responses were not "immediate and appropriate" and therefore inadequate to absolve defendants of liability. *See Trotta v. Mobil Oil Corp.,* 788 F.Supp. 1336, 1351 (S.D.N.Y.1992). She cites, as examples of these inadequacies, the untimeliness of Braun's investigation, which took place more than four months after Riedinger's complaint to Finn and three months after her conversation with Johnson; Braun's failure, during the investigation, to question other possible witnesses to the alleged harassment; and the absence of evidence that Johnson or Braun officially disciplined D'Amicantino for his behavior.

These alleged shortcomings in defendants' response to plaintiff's complaints provide an adequate basis for a jury reasonably to conclude that the defendants either provided no reasonable avenue for complaint or that they knew about the discrimination to which Riedinger was subjected and acted inadequately to alleviate it. *See Dortz v. City of New York,* 904 F.Supp. 127, 154–55 (S.D.N.Y. 1995). Accordingly, defendants' motion for summary judgment is denied with respect to Riedinger's Title VII hostile work environment claim.

## TITLE VII RETALIATORY DISCRIMINATION

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [s]he has opposed any ... unlawful employment practice." 42 U.S.C. § 2000e–3(a). To make a prima facie case of retaliatory discrimination, a plaintiff must demonstrate by a preponderance of the evidence: "i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka,* 66 F.3d at 1308; *see also Kotcher,* 957 F.2d at 64.

■ Riedinger easily satisfies, for the purposes of this motion, the first two prongs of that prima facie test. First, it is well established that internal complaints, such as those made by Riedinger to Finn, Johnson and Braun about harassment she experienced at the Division constitute a protected activity. See *Kotcher,* 957 F.2d at 65; *Tomka,* 66 F.3d at 1308. Second, retaliatory conduct may not only consist of an employee's termination, but can also include of less severe action as long as the conduct "affects the terms, privileges, duration, or conditions of the plaintiff's employment." *Dortz,* 904 F.Supp. at 156 (internal quotations omitted), Riedinger contends that in response to her complaints, she was subjected to the following adverse employment decisions: changes in her work schedule, the denial of a leave of absence, yelling and verbal insults, threats of termination, and written reprimands and negative performance evaluations. These actions at least arguably affected Riedinger's ability to perform her job and thus raise genuine issues of material fact in regard to the second prong of plaintiff's prima facie case of retaliation. *See id; Yaba,* 961 F.Supp. at 621; *Brown,* 1997 WL 231143, at *9–10.

Riedinger has also adduced sufficient evidence to establish a causal connection between the protected activity and the adverse employment action. Riedinger alleges that the actions took place from a few days to two months after her complaints. A causal connection can be established through such indirect evidence of close proximity in time. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir.1996); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). Thus, a fact finder could reasonably find an inference of discrimination sufficient to establish the third prong of Riedinger's prima facie claim. *Tomka*, 66 F.3d at 1308; *see also Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir.1986).

■ Once a plaintiff has established a prima facie case, the burden shifts to the defendants who "must demonstrate legitimate reasons for [their] actions, whereupon the plaintiff bears the burden of showing that the defendant[s'] explanations are pretext for the true discriminatory motive." *Van Zant*, 80 F.3d at 714; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). At this stage, Riedinger will prevail so long as her evidence is sufficient to raise a genuine issue of material fact as to whether defendants' proffered reasons are merely pretext for the adverse employment actions. *Tomka*, 66 F.3d at 1309.

Here, defendants gave Riedinger letters of reprimand for tardiness twice in February 1994, when she had been approximately six minutes late to work. Defendants contend that their motivation for issuing these reprimands was nondiscriminatory, as plaintiff was the only secretary at the Division and was required to be at work on time to open the office. Riedinger, however, asserts that this explanation is pretext, noting that no one had checked on her tardiness before she complained about D'Amicantino and that it had not been the Division's general policy to give letters of reprimand to employees who

were only a few minutes late. Braun confirmed in his deposition that memorializing criticisms over tardiness was highly unusual.

I find that defendants' response, at least arguably, creates an issue of material fact as to whether defendant's proffered reasons are pretexual. Accordingly, defendants' motion for summary judgment is denied with respect to plaintiff's Title VII retaliation claim.

**FIRST AMENDMENT CLAIMS**

■ Defendants further move for summary judgment with respect to Riedinger's claims that they violated her right to free speech and the right to petition the government. Defendants assert that their actions as public employers did not violate plaintiff's rights under the First Amendment.

For a public employee to establish that her First Amendment rights have been violated, she must show: "(1) that the conduct at issue was protected speech; and (2) that the speech played a substantial part in the employer's adverse employment action." *Ezekwo v. NYC Health & Hosps. Corp.* 940 F.2d 775, 780 (2d Cir.1991).[4]

The speech of a government employee is protected if it can "be fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest," the First Amendment's protections do not apply. *Id.* at 147, 103 S.Ct. at 1690. "The fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light a 'matter of political, social, or other concern to the community.'" *Rao v. New York City Health & Hosps. Corp.*, 905 F.Supp. 1236, 1243 (S.D.N.Y.1995) (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. at 1690).

A public employee's comments on gender discrimination may, in certain circumstances,

---

**4.** Because the right to petition the government for redress of grievances under the First Amendment is "an assurance of a particular freedom of expression ... [it] is 'generally subject to the same constitutional analysis' as the right to free speech." *White Plains Towing*, 991 F.2d at 1059

(citing *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985)). Therefore, the Court treats both of Riedinger's First Amendment claims collectively for the purposes of this motion.

constitute matters of public concern. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987). For example, if a plaintiff's suit is " 'part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention,' " *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (quoting *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir.1988)), or if her "complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.' " *Saulpaugh*, 4 F.3d at 143. An employee's speech does not touch up on a matter of public concern where her complaints are related to her own situation. *Saulpaugh*, 4 F.3d at 143.

Here, Riedinger has adduced no evidence that the harassing behavior extended to anyone other than herself or was part of a larger effort to bring defendants' allegedly unlawful practices to public attention. While Riedinger contends that Finn, the only other woman at the Juvenile Division, was also the target of D'Amicantino's alleged harassment, that contention is not supported by the evidence before this Court, including Finn's own deposition testimony. Even if sufficient evidence were subsequently uncovered that D'Amicantino had also sexually harassed another employee, the facts presently before the Court do not support a finding that plaintiff's complaints were motivated by or dealt with anything other than her individual employment situation. *See Saulpaugh*, 4 F.3d at 143.

As Riedinger has failed to demonstrate that her speech involved a matter of public concern, defendants' motion for summary judgment is granted with respect to plaintiff's First Amendment claims.

## CONSTRUCTIVE DISCHARGE AND DUE PROCESS VIOLATIONS

Riedinger alleges that defendants violated her procedural due process rights by constructively discharging her without the benefit of a pre-deprivation hearing. Defendants base their motion for summary judgment on the absence of evidence that their conduct ·amounted to a constructive discharge.

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily." *Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 89 (2d Cir.1996); *see also Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983). "Working conditions are intolerable if they are 'so difficult or unpleasant that a reasonable person would have felt compelled to resign.' " *Chertkova*, 92 F.3d at 89 (citing *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987)) (quoting *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977)).

A constructive discharge may be inferred when an employer threatens an employee with termination, suggests that she resign or retire, demotes her by changing her job title and responsibilities for a non-business related reason, or reduces her salary or benefits. *See Stetson v. NYNEX Service Company*, 995 F.2d 355, 360 (2d Cir.1993) (citing *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1160–61 (3d Cir.1993)). "Certain factors, standing alone are legally insufficient to support constructive discharge.... But the effect of a number of adverse conditions in the workplace is cumulative." *Chertkova*, 92 F.3d at 90.

I find that Riedinger has adduced sufficient evidence to preclude this Court from granting summary judgment on plaintiff's due process claim. First, although Riedinger complained to Finn in mid-July 1993, she continued to work with D'Amicantino on a daily basis until her resignation. *See Dortz*, 904 F.Supp. at 159 ("[W]hen an employee who has suffered from discriminatory conduct is required to engage in daily dealings with her alleged wrongdoer, she may suffer an aggravated sense of humiliation giving rise to a constructive discharge.") (internal quotation omitted). Second, because plaintiff has made out a prima facie case of hostile work environment sexual harassment, the issue of "[w]hether a reasonable person might find this environment so unpleasant and difficult that she would feel compelled to resign is a factual question properly left for trial." *Id.* at 159. Third, because the alleged harassment and retaliation continued despite her complaints to Finn, Johnson and Braun,

a jury could determine that defendants did not and would never address her concerns. *See id.*

Riedinger also alleges that her employers twice threatened her with dismissal, once in a phone call with Johnson and once in a letter from Braun. Both instances occurred with respect to her back injury in September and October 1993. Defendants argue that they "threatened" plaintiff only because they were confused as to her sick leave and disability compensation. Plaintiff asserts that these incidents constituted continued acts of retaliation. A reasonable person, viewing these conditions collectively, could conclude that the working conditions were so intolerable as to compel plaintiff to resign. Accordingly, defendants' motion for summary judgment on this claim is denied.

## QUALIFIED IMMUNITY

 Finn, Johnson, Sassi and Braun contend that they are entitled qualified immunity from suit on plaintiff's due process claim insofar as they are sued in their individual capacities. Qualified immunity is an affirmative defense that shields defendant officials in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Frank v. Relin,* 1 F.3d 1317, 1327–28 (2d Cir.1993); *Piesco v. City of New York, Dept. of Personnel,* 933 F.2d 1149, 1160 (2d Cir.1991). Such officials may also be qualifiedly immune "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Frank,* 1 F.3d at 1328; *Piesco,* 933 F.2d at 1160.

To determine whether a right had been clearly established at the time that the defendant acted, a court must decide: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Frank,* 1 F.3d at 1328; *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

When the law is clearly established, a defendant cannot claim qualified immunity, because "a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. For a defendant to employ the affirmative defense, he must demonstrate that it was objectively reasonable for him to believe that he did not violate the plaintiff's rights. *Frank,* 1 F.3d at 1328. As our Court of Appeals has stated,

summary judgment will be appropriate only if the defendant 'adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ]' to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Id.* (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986)).

At the time of the events underlying plaintiff's allegation of constructive discharge, it was clearly established that an employer could not make working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Martin v. Citibank, N.A.,* 762 F.2d 212, 221 (2d Cir.1985). Moreover, the law of procedural due process had been clearly established, precluding the deprivation of plaintiff's property interest in her continued employment without a predisposition hearing. *See Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 537, 105 S.Ct. 1487, 1490–91, 84 L.Ed.2d 494 (1985). Defendants' assertion that they are entitled to qualified immunity rests upon the notion that it was objectively reasonable for them to believe that they did not intentionally create an intolerable work atmosphere, forcing

**332**

Riedinger to resign. *See Chertkova*, 92 F.3d at 89. However, this defense rests entirely upon disputed issues of material fact. See Wise, 928 F.Supp. at 370–71. Whether defendants' conduct was objectively reasonable cannot be determined at this phase of the litigation. Therefore, defendants' motion for summary judgment on plaintiff's constructive discharge claim on the ground of qualified immunity is denied.

## CONCLUSION

For the above reasons, defendants' motion for summary judgment is granted with respect to plaintiff's First Amendment claims under 42 U.S.C. § 1983. With respect to all other claims, defendants' motion for summary judgment is denied.

SO ORDERED.