Katheryn DEMILO–FYTROS, Plaintiff,

v.

CITY OF MOUNT VERNON, Mount Vernon Department of Public Safety, Ronald Blackwood, Ralph Fatigate, Michael Craparo and Richard Duncan, Defendants.

No. 96 Civ. 4006(BDP).

United States District Court,
S.D. New York.

Feb. 18, 1998.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiffs.

Ernest R. Stolzer, Rains & Pogrebin, P.C., Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiff, a former member of the Mount Vernon Department of Public Safety (the "Department"), filed this suit in May 1996, pursuant to 42 U.S.C. §§ 1983 and 1985; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., alleging that the defendants unlawfully discriminated against her by subjecting her to sexual harassment and by denying her promotions and otherwise discriminating against her on the basis of her sex and her work incurred disability. Defendant Ronald Blackwood was the Mayor of Mount Vernon from February 1, 1985 until December 31, 1995. Defendants Ralph Fatigate, Michael Craparo, and Richard Duncan were members of the Department during the events giving rise to this lawsuit.

The defendants have moved for summary judgment. The individual defendants also assert the defense of qualified immunity. For the reasons that follow, defendants' motion is granted in part and denied in part. The Title VII claims are dismissed as to the individual defendants and defendant Ronald Blackwood is entitled to qualified immunity. In all other respects, the defendants' motion is denied.

### BACKGROUND

What follows is a brief summary of the facts of the case. As required on a motion for summary judgment, any ambiguities have been resolved in the light most favorable to the plaintiff, as the party opposing the motion, and all reasonable inferences have been drawn in favor of the plaintiff. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996).

Plaintiff joined the Department in 1973 as a patrol woman. From 1983 until she left the Department as a Lieutenant in March 1996, plaintiff was the highest ranking woman in the Department. In May 1996, plaintiff commenced this action.

The events that form the basis of plaintiff's claims span 14 years, from 1982 to 1996. Throughout this period plaintiff contends that she was repeatedly denied promotions on the basis of sex. One more than one occasion plaintiff was at or near the top of the eligibility list for a promotion, based on, among other things, her scores on civil service exams. Repeatedly, however, the promotion was awarded to a lower ranked male candidate.

Plaintiff also complains of a series of sexually degrading remarks, computer messages, and jokes through the years. For example, plaintiff states that television programs and videotapes depicting sexual acts were viewed in the Department, lewd computer messages were circulated via email, and graphic sexual images were printed on notices posted in the Department.

Plaintiff also alleges a variety of other discriminatory practices. For example, she was provided with a bulletproof vest made for a man that did not properly fit her and more than 10 years elapsed before she was reissued a better fitting vest. Although the Department had a separate locker room for male supervisors, there was no separate locker room for female supervisors. Plaintiff was not recommended for specialized training while men possessing comparable experience and qualifications were so recommended. On two occasions other officers failed to respond to plaintiff's calls for backup assistance.

Plaintiff also complains of a variety of other acts occurring outside the Department that she believes were perpetrated by members of the Department. For example, plaintiff's car was repeatedly vandalized. Once, the bolts on the vehicle's front tire were loosened. On another occasion, a gunshot shattered her vehicle's rear window. A dead pigeon was also placed on her windshield. Additionally, someone once called in a false report of plaintiff's death.

When plaintiff injured her back in the line of duty in January 1995, and had to miss numerous days of work, she was penalized for having been absent, even though plaintiff claims that each absence was medically necessary and that she had obtained the proper medical documentation and necessary approvals. Specifically, plaintiff's assignment was changed to one that decreased her chances of promotion and also so aggravated her back injury that she was eventually unable to work. Plaintiff was subsequently denied a promotion that went to a man.

## DISCUSSION

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d 614 at 619. A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgement. *Wernick*, 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250).

## CONTINUING VIOLATION

An issue of paramount importance on this motion is whether plaintiff's claims, to a sub-

stantial degree, are time barred. It is undisputed that many of the events that form the basis of plaintiff's claims occurred beyond the period encompassed by the applicable statute of limitations.

■ Plaintiff asserts that the statute of limitations should not bar her claims because the acts of discrimination of which she complains constitute a "continuing violation." *See Annis v. County of Westchester,* 136 F.3d 239 (2d Cir.1998) *Riedinger v. D'Amicantino,* 974 F.Supp. 322 (S.D.N.Y.1997). "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period ." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

■ Although discrete incidents of discrimination will not usually support a finding of a continuing violation, a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. *Karen Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996); *Cornwell,* 23 F.3d at 704.

■ Plaintiff's allegations, if credited may be sufficient to constitute a discriminatory policy or practice. Plaintiff recounts a variety of potentially discriminatory actions that may be pervasive, numerous, and significant. For example, plaintiff describes several instances in which she was denied a promotion that went to a man who, at least based on objective criteria, was no more qualified than she. Plaintiff also describes enough incidents of sexual lewdness, pranks, and innuendo that a trier of fact could characterize the Department as a sufficiently hostile work environment to support a finding of sex discrimination.

The extent of the actions of which plaintiff complains might have been sufficient to put the Department on notice as to their existence. It is undisputed that the Department did not act in response to many of the events of which plaintiff complains. Indeed, many of the events of which plaintiff complains involved high ranking Department officials.

The defendants, of course, do offer nondiscriminatory explanations for many of the actions or events of which plaintiff complains. For other events, the defendants attempt to minimize their significance. On this record, whether the complained of events are, singly or in combination, innocuous and innocent rather than discriminatory and ill-intentioned is a determination that can only be made on the basis of a more complete record. This issue can be revisited at the time of trial.

## INDIVIDUAL DEFENDANTS

■ The doctrine of qualified immunity entitles public officers to be shielded from liability for damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416 (2d Cir.1995); *Zavaro v. Coughlin,* 970 F.2d 1148, 1153 (2d Cir.1992); *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991), or unless it was objectively unreasonable for them to believe that their acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638–639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994).

■ The right alleged to have been violated must be clearly established at a level of specificity such that "a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640. To be deprived of the defense of qualified immunity, a public official must not simply violate plaintiff's rights; rather the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights. *Anderson,* 483 U.S. at 640.

■ The individual defendants in this case assert the defense of qualified immunity. The Court has reviewed the plaintiff's allegations and the materials submitted in connection with this motion for summary judgment and has concluded that defendants Fatigate,

Craparo and Duncan have not established on the current record that they are entitled to qualified immunity. Each of these individuals took an active role in many of the events of which plaintiff complains. The same factual disputes that prevent summary judgment on plaintiff's substantive claims preclude a determination at this time as to whether they are entitled to qualified immunity. Defendant Blackwood, in contrast, was not directly involved in the events of which plaintiff complains. As mayor of the City of Mount Vernon, Blackwood took no actions that clearly violated plaintiff's constitutional rights. Therefore, the defense of qualified immunity is available at this time to Blackwood, but not to Fatigate, Craparo, or Duncan.

■ However, none of the individual defendants may be individually liable under Title VII. Title VII provides for employer liability but not for individual liability. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995). In *Tomka*, the Second Circuit held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka*, 66 F.3d at 1313. Thus, the Title VII claims against the individual defendants must be dismissed.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is granted in part and denied in part. Defendant Ronald Blackwood is entitled to qualified immunity. The Title VII claims are dismissed as to the individual defendants, namely Blackwood, Fatigate, Craparo, and Duncan. In all other respects, the defendants' motion is denied.

**SO ORDERED.**