Patricia A. GIBSON, Plaintiff,

v.

**CRUCIBLE MATERIALS CORPO-
RATION and Crucible Special-
ty Materials, Defendants.**

**No. 5:99–CV–844 FJS/GLS.**

United States District Court,
N.D. New York.

Nov. 7, 2003.

Law Office of Stewart L. Weisman, Manlius, NY (Stewart L. Weisman, of counsel), for plaintiff.

Jackson, Lewis, Schnitzler & Krupman, White Plains, NY (Margaret Armstrong Weiner, of counsel), Hancock & Estabrook, LLP, Syracuse, NY (Michael J. Sciotti, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

On June 1, 1999, Plaintiff filed a complaint against Defendants alleging that while she was employed by Defendants, she was subjected to discrimination based on her sex in violation of Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law. Specifically, Plaintiff claims that she was subject to a hostile work environment in violation of 42 U.S.C. § 2000e–2(a)(1), unlawful retaliation based on her complaints of sexual harassment in violation of 42 U.S.C. § 2000e–5, and unlawful gender discrimination and retaliation under New York Executive Law § 296.

Presently before the Court is Defendants' motion for summary judgment as to all claims. The Court heard oral argument in support of, and in opposition to, this motion on January 15, 2002, and reserved decision at that time. The following constitutes the Court's written decision with regard to the pending motion.

## II. DISCUSSION

### A. Summary Judgment Standard

A court should grant a motion for summary judgment only if "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)).

Although discrimination cases often involve a fact-intensive inquiry that precludes summary judgment, a court may award summary judgment where a fact finder could not infer a discriminatory motive. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001).

With these standards in mind, the Court will address each of Plaintiff's claims.

## B. Hostile Work Environment Claim[1]

Plaintiff, a licensed plumber/pipefitter, began working at Crucible Materials Corporation's Solvay, New York plant in August 1995. As a pipefitter, her job was to inspect, repair, and install pipes and tubes and work on machines and equipment that transported liquids, gases, steam, and hydraulic fluids throughout the steel mill. She contends that during the entire time that she worked at Crucible (August 1995 to September 2000), she was subjected to "physical and verbal sexual abuse, had to endure pernicious pornographic magazines, calendars, and postcards throughout the plant, and suffered from ostracism and retaliation for complaining about the various incidents of sexual harassment." *See* Plaintiff's Memorandum of Law at 1.

## 1. *Liability of Defendants: co-worker conduct*

■ In the present case, Plaintiff's allegations of a hostile workplace, for the most part, have to do with the conduct of her co-workers. To establish a *prima facie* case of hostile work environment sexual harassment under either Title VII or New York Human Rights Law based upon the conduct of her co-workers, a plaintiff must demonstrate "(1) harassment that was sufficiently severe or pervasive to alter the conditions of her employment, creating an abusive working environment, and (2) a sufficient basis for imputing the conduct that created the hostile environment to her employer." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir.2001) (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).

■■ As stated, Plaintiff must first establish that the evidence will show that the

1. Title VII contains a provision that is analogous to a statute of limitations. Under Title VII, a charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred ...." 42 U.S.C. § 2000e–5(e)(1). *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 n. 10, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

At the time of oral argument in this case, the general rule was that the limitations period began to run on the date of the discriminatory act. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (quotation and other citation omitted). A plaintiff could only establish her case based on events falling outside of the limitations period by relying upon the continuing violation exception, which holds that "where evidence of an ongoing discriminatory policy or practice is present, the Court may consider all of an employer's actions allegedly taken pursuant to such policy, even if some are time-barred." *Rivera v. Prudential Ins. Co. of Am.*, Nos. 95–CV–0829, 95–CV–0830, 1996 WL 637555, *6 (N.D.N.Y. Oct.21, 1996) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996)). Therefore, under this analysis, since Plaintiff filed her

charge with the New York State Division of Human Rights/Equal Employment Opportunity Commission on December 9, 1998, absent a showing of a continuing violation, only those acts alleged to have occurred on or after February 13, 1998, could be considered as the basis of Plaintiff's claim.

After submissions and oral argument, the Supreme Court decided *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *National R.R.*, the Court held that, in regard to hostile environment claims, where a single act contributing to the hostile environment occurs within 300 days of the filing of the charge, the court may then consider all acts which contributed to the hostile environment, even where some of the acts occurred more than 300 days before the filing of the charge. *See id.* at 117, 122 S.Ct. 2061; *see also Peterson v. Washington County Dep't of Pub. Works*, No. 1:00–CV–1092, 2002 U.S. Dist. LEXIS 25260, *4 (N.D.N.Y. Dec. 19, 2002) (citation omitted). Under *National R.R.*, a plaintiff's allegations of harassment are only time-barred if they are unrelated and do not form part of a hostile working environment. *See National R.R.*, 536 U.S. at 118, 122 S.Ct. 2061.

conduct complained of is " ' "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." ' " *Rivera v. Prudential Ins. Co. of Am.*, Nos. 95–CV–0829, 95–CV–0830, 1996 WL 637555, *8 (N.D.N.Y. Oct.21, 1996) (quoting *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2d Cir.1992) (quotation omitted)). To do so, a plaintiff must demonstrate harassment that consists of " 'more than isolated incidents or casual comments that express harassment or hostility.' " *Id.* at *8 (quoting *Babcock v. Frank*, 783 F.Supp. 800, 808 (S.D.N.Y. 1992)). " '[T]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.' " *Id.* (quoting *Kotcher*, 957 F.2d at 63 (citing *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989))).[2]

 The second prong of this analysis requires that harassment " 'occurred with respect to "terms, conditions, or privi-

leges" of employment, . . . though [the plaintiff] need not show that [she] lost any tangible job benefits as a result thereof.' " *Rivera*, 1996 WL 637555 at *8 (quoting [*Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2nd Cir. 1995)] ).

Although Plaintiff's allegations concern events which for the most part appear to be sporadic and/or isolated incidents, and although it is questionable whether they materially altered the terms and conditions of her employment, Second Circuit precedent suggests that, in the context of a summary judgment motion, a plaintiff's burden to establish a "hostile workplace" is not great. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir.1999) (citation omitted). While the Court is not convinced that Plaintiff has met her burden, in view of the low threshold, it will assume, without deciding, that Plaintiff has met her burden on this first element of her *prima facie* case.[3]

---

**2.** With her Memorandum of Law, Plaintiff submitted the report of an expert, Francine Mocchio, to substantiate her claims of a hostile work environment. Defendants objected, contending that the report improperly drew conclusions regarding whether the environment was hostile within the meaning of Title VII and the New York Human Rights Law. The Court does not find Mocchio's conclusions to be expert, nor does it find that expert testimony is necessary to assist the trier of fact, judge or jury. *See Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir.1989) (citations omitted) (rejecting a so-called expert report because the report was directed "to lay matters which a jury is capable of understanding and deciding . . . .").

**3.** In their Memorandum of Law, Defendants correctly point out that a plaintiff may not attempt to raise factual issues and avoid summary judgment by asserting facts in her affidavit opposing summary judgment which contradict her prior deposition testimony. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001) (citing *Bickerstaff v. Vassar Col-*

*lege*, 196 F.3d 435, 455 (2d Cir.1999); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997)). Therefore, to the extent that Plaintiff's assertions in her affidavit directly contradict her deposition testimony, the Court has disregarded the affidavit.

Defendants also object to Plaintiff's Statement of Material Facts, filed pursuant to Local Rule 7.1(a)(3). Local Rule 7.1(a)(3) requires that the party opposing a motion for summary judgment set forth a response to the movant's Statement of Material Facts, which admits or denies each of the movant's assertions, with "a specific citation to the record where the factual issue arises." *See* L.R. 7.1(a)(3). Defendants have correctly asserted that Plaintiff's response includes no citations to the record and fails to specifically controvert many of Defendants' assertions. Where the non-movant's response to the Statement of Material Facts does not comply with Local Rule 7.1(a)(3), courts have deemed admitted the facts as presented by the movant and, in some cases, granted summary judgment. *See, e.g., Gubitosi v. Kapica*, 154 F.3d 30, 31 n. 1 (2d Cir.1998) (per curiam); *Riley v. Town of*

However, the second element of a Title VII hostile work environment claim based on the conduct of co-workers requires that the plaintiff show that the conduct in question may be fairly imputed to the employer. Furthermore, where a co-worker or low-level supervisor has perpetrated the harassment, "liability will be imputed to the employer 'only if it is negligent, that is, if it either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Ferris*, 277 F.3d at 136 (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 441 (2d Cir.1999) (internal quotation marks omitted)) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 799, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting agreement among the circuits that liability should be imputed to employers in cases of co-worker harassment only if the employer was negligent)).

Defendants maintain that Plaintiff's allegations and factual assertions in her complaint fail to support a finding of negligence as a matter of law. First, during the entire term of Plaintiff's employment, Defendants provided a reasonable avenue of complaint—Defendants drafted and posted a sexual harassment policy with a complaint process before Plaintiff began work at the plant.[4] Plaintiff admits that all new employees, including her, received a copy of the policy. Plaintiff also admits that she knew the content of the policy, including changes to the policy over time. Plaintiff also recognized that Defendants had a harassment reporting process and that she in fact used the process to gain access to management. Plaintiff did not allege that any member of management ever refused to meet with her or listen to her complaints.[5] Moreover, Defendants maintain that, in those instances where they knew of Plaintiff's complaints, they took corrective action.

Plaintiff's complaints regarding her co-workers are as follows: (1) She alleges that her co-worker, Carmen Vecchio,[6] made sexual advances toward her in 1995,

*Bethlehem*, 5 F.Supp.2d 92, 93 (N.D.N.Y. 1998) ("Rule 7.1(f) is not a suggestion, nor is it a rule of general guidance upon which attorneys are free to impose their own interpretations of what must be submitted."). The Court therefore deems admitted the facts as presented in Defendants' Statement of Undisputed Facts.

4. Under the principles announced in *Faragher*, whether an employer had a sexual harassment policy in place, with a complaint process, is important to a showing that the employer was not negligent. 524 U.S. at 808–09, 118 S.Ct. 2275.

5. The fact that Plaintiff has enumerated certain flaws in the complaint process, including its failure to specify time frames for a remedial response, is insufficient to raise a fact issue as to whether Defendants were negligent. *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir.2001) (quotation omitted).

6. With respect to the status of Carmen Vecchio, Defendants assert that he was Plaintiff's co-worker while Plaintiff contends that he sometimes served as a Team Leader or Work Leader, thus making him a supervisor. For purposes of Title VII, an individual is a supervisor if that individual exercises immediate or higher authority over an employee. *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 123 (2d Cir.2003). Where parties dispute whether an individual is a supervisor, the court will examine whether that individual exercised control over the particulars of the employee's workday, whether the company or organization recognized that individual as having authority over other workers, and whether another supervisor was present to check that individual's misbehavior. *See id.* at 125–26. In the present case, evidence provided by Defendants supports a finding that Mr. Vecchio is a co-worker. Plaintiff has not provided a single instance in which Mr. Vecchio assigned her to any jobs or otherwise directed or assigned her work or the work of others at the plant. Therefore, the Court concludes that, despite her conclusory assertion to the contrary, Mr. Vecchio was Plaintiff's co-worker.

and when she rebuffed him, he and the other workers became hostile toward her and often referred to her as "cunt" or "bitch;" (2) during 1997, workers played pranks on her, one of which resulted in her sustaining an eye injury; (3) in 1998, several co-workers drafted a petition stating that they were opposed to working with her; (4) although she requested that Defendants place a door on the mens' shower room in 1998, they did not do so; (5) an unknown individual periodically posted sexually derogatory comments about her on the walls of the men's bathrooms; and (6) there were numerous instances of pornographic materials around the mill.

■ As to Mr. Vecchio's behavior, Plaintiff admitted that, within one week of Mr. Vecchio's outburst, he received a verbal warning from Defendants. Plaintiff also admits that in response to her complaint that workers used sexually derogatory epithets toward her, Merwin Robinson, a supervisor, warned employees at a safety meeting that profanity toward other employees was against company rules and would not be tolerated. With respect to her complaints regarding the pranks and writing on the restroom walls in 1997, Defendants held a meeting within a few weeks of the complaint to admonish workers for horseplay, warned them that further pranks would result in discipline, and removed or painted over the messages within a few days.[7] As to Plaintiff's complaint of Defendants' failing to discipline other workers for petitioning to avoid working with her, such conduct cannot be the subject of discipline.[8] With regard to Plaintiff's complaint that Defendants failed to place a door on the mens' shower room, Plaintiff's counsel admitted at oral argument that Plaintiff never worked in the shower area when it was in use, and so the situation did not result in embarrassment to Plaintiff.[9] With respect to her complaints of pornographic materials, Defendants responded by establishing sweeps to remove pornographic material immediately following Plaintiff's first complaint, which she filed in 1997. Although Plaintiff contends that unknown individuals constantly re-posted pornography, she acknowledged during her deposition that the sweeps were successful in removing much of it and that Defendants investigated each of her allegations of pornography in the mill and took appropriate action.

The thrust of Plaintiff's argument is that Defendants' actions were too little, too late. However, Defendants have shown that their response to incidents of harassment was significantly delayed only where Plaintiff had not brought her complaints to their attention. For instance, Plaintiff admitted that she never reported her allegation that Mr. Vecchio tried to kiss her or patted her behind. She also claimed that Defendants' verbal warning to Mr. Vecchio was insufficient. However, Mr. Vecchio never again threatened or propositioned Plaintiff, and a plaintiff's harassment claim cannot survive summary judgment where a plaintiff has shown only that the defendant "could have been more sensitive in dealing with her on a personal level, and could have been more aggressive in disciplining [the harassing employees]." *De Silva v. Bluegreen Corp.*, No. 96–CV–0683,

---

7. It was never determined who performed the pranks and posted the messages.

8. In addition, the record is clear that no worker ever refused to work with Plaintiff, and Defendants provided her with the assistance of another pipefitter at her request.

9. The mere assertion that incidents of sexual harassment *could* arise does not suffice to raise a fact issue.

1997 WL 727523, *8 (N.D.N.Y. Oct.7, 1997).

For all these reasons, the Court finds that Plaintiff has failed to allege facts to support a basis for imputing the conduct of her co-workers to Defendants. Accordingly, the Court grants Defendants' motion for summary judgment with respect to this aspect of Plaintiff's hostile work environment claim.

### 2. Liability of Defendants: supervisory employee conduct

■ *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), established an employer's liability in regard to supervisors: an employer is presumed liable for the sexual harassment of an employee by a supervisor with immediate or successively higher authority over her. *See Faragher,* 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. However, in a hostile work environment claim that does not culminate in a tangible employment action, the employer may escape liability by demonstrating: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275.

■ Plaintiff has not shown that she was subject to a tangible employment action. *See, e.g. Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, . . ."); *see also Wilburn v. Fleet Fin. Group, Inc.,* 170 F.Supp.2d 219, 227 (D.Conn.2001). Plaintiff's responsibilities, salary and benefits either remained unchanged or increased until she resigned of her own accord. As a result, Plaintiff provided no evidence that she suffered any "direct economic harm" or that her responsibilities changed so as to constitute a tangible employment action. Therefore, the Court finds that the *Faragher/Ellerth* affirmative defense applies.

Plaintiff's only possible identifiable allegation of supervisor misconduct concerned a meeting in which a supervisor, David Waite, discussed the benefits of fellatio at a safety meeting.[10] Plaintiff was not present during the safety meeting, and she admitted that she only knew of the misconduct because other employees related it to her. Plaintiff also admits that Defendants enforced their sexual harassment policy by terminating Mr. Waite after she complained about his conduct.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to this aspect of Plaintiff's hostile work environment claim as well.

### 3. Liability of Defendants: New York law

■ Under New York law, to hold an employer liable for the acts of its employees, a plaintiff must prove that her employer " 'became a party to [the discrimination] by encouraging, condoning, or approving it.' " *Rivera,* 1996 WL 637555, at *12 (quoting *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 295, 480

---

**10.** Although Plaintiff's submissions have not indicated whether Mr. Waite ever supervised her, viewing the facts in the light most favorable to Plaintiff, the Court assumes that he supervised her.

N.E.2d 1075 (1985)) (other citation omitted). Since, as discussed above, neither the conduct of lower level employees nor the conduct of supervisors can be imputed to Defendants, Plaintiff has also failed to establish her claim under the New York Human Rights Law's higher standard. Accordingly, the Court grants Defendants' motion for summary judgment with respect to this aspect of Plaintiff's hostile work environment claim.

## C. Plaintiff's Retaliation Claim [11]

■■■■ To establish a *prima facie* case of retaliation under Title VII as well as the New York Human Rights Law, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) her employer took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) (quotation omitted); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997). For purposes of a retaliation claim:

> an "adverse employment action" constitutes a "materially adverse change" in the employee's working conditions, ..., such as termination, demotion, or a reduction in wages or benefits.... "[L]ess flagrant reprisals by employers may [also] be adverse." ... Because there are no bright-line rules as to which employment actions meet the threshold for "adverse," courts must make this determination on a case-by-case basis.

*Wilburn*, 170 F.Supp.2d at 236–37 (internal quotations and citations omitted).

The parties agree that Plaintiff participated in a protected activity by complaining to the New York State Division of Human Rights ("NYSDHR") in March 1997 and January 1998; filing a complaint with the NYSDHR in December 1998; and commencing this lawsuit on June 1, 1999. According to Plaintiff, Defendants retaliated by giving her a safety warning; ostracizing her; moving her to the conditioning department in late 1998, which she contended was an unfavorable area to work; and deliberately denying her overtime. Plaintiff also alleges that Defendants deliberately caused her injury in December of 1998 by sending her to an unsafe area of the plant, where she fell and broke a rib. Finally, Plaintiff alleges that a Vice President, William Pierce, threatened another worker who sided with her.

Although Plaintiff has provided only minimal evidence that each of these activities were adverse, viewing the facts in the light most favorable to Plaintiff, the Court will again assume she has satisfied this element of her *prima facie* case.

■■■■ That being said, however, Plaintiff has not alleged sufficient facts to show, directly or indirectly, that there is a causal connection between her complaints and the adverse actions taken against her. She admitted that, at one point, her workmanship was insufficient and therefore merited the safety warnings. With regard to her claim that other workers ostracized her because of her complaint, such conduct by co-workers cannot be the basis for a retaliation claim against the employer absent any showing that the employer condoned or instigated it.

Further, Defendants have offered a legitimate, nondiscriminatory reason for moving Plaintiff to the conditioning de-

**11.** Courts examine retaliation claims under the New York Human Rights Law in the same manner as Title VII claims. *See McDonald v. B.E. Windows Corp.*, No. 01 Civ. 6707, 2003 WL 21012045, *3 n. 1, 2003 U.S. Dist. LEXIS 7472, *6 n. 1 (S.D.N.Y. May 5, 2003) (citation omitted).

partment—they needed a capable pipefitter in the area, and the prior worker had not performed acceptably. In addition, when Plaintiff thereafter requested a shift change that would take her out of the conditioning department, Defendants granted her request. As to the lost overtime, it is undisputed that a co-worker was responsible. Defendants disciplined the co-worker who was responsible for omitting Plaintiff from the overtime schedule, and again, Plaintiff has failed to establish any basis for imputing the co-worker conduct to the employer. As to Plaintiff's allegation that Defendants deliberately sent her to work in a dangerous area, there is absolutely no evidence to support this claim. Finally, although Plaintiff provided some evidence that Vice President William Pierce did not like her, her own admissions show that Mr. Pierce's animus was not based on her gender or on her sexual harassment complaint. Rather, Mr. Pierce was unhappy with what he perceived as Plaintiff's unwillingness to attend a safety meeting.

In view of the forgoing, Plaintiff has failed to establish a material fact in issue that would support her claim of retaliation.

Accordingly, since Plaintiff has failed to produce any evidence of a causal connection between her complaints and the alleged adverse actions taken against her, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim.[12]

### III. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, as well as the applicable law, and for the reasons stated herein as well as at oral argument on January 15, 2002, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

---

12. Since the Court has determined that Defendants are entitled to summary judgment with respect to all of Plaintiff's claims, it need not reach the parties' arguments concerning damages.